### AUCHMUTY *vs.* HAM.

The statute making the owner of a dog which shall *kill* or *wound* sheep liable, with-
out notice that he was mischievous, has no application where the sheep were
only *chased and worried*. In that case there must be proof of the *scienter* to ren-
der the defendant liable.

The provision rendering a person in possession of a dog, or who shall suffer a dog to
remain about his house for twenty days, &c. liable as owner for his mis-
chievous acts, does not make an employer liable for mischief done by the
dog of his hired laborer, where the dog was in the habit of following his master
daily to his work on the farm of the employer and of returning each night to and
staying with his master at his own house, which was distinct from that of the
employer.

A party prosecuted on account of sheep killed or wounded by his dog, of whose
mischievous propensities he had no knowledge, is not liable to *exemplary damages*,
the statute limiting the recovery to the value of the sheep.

Where dogs belonging to several owners are found in *company* engaged in killing
sheep, each owner is responsible for the injury done by his own dog, and for
no more.

ERROR to the Dutchess common pleas. Ham sued Auch-
muty in November, 1843, before a justice of the peace in an ac-
tion on the case for knowingly keeping a dog accustomed to
bite sheep, which dog bit one hundred of the plaintiff's sheep,
fifty of which died, and the residue were greatly injured. Sec-
ond count, for that whereas, a certain dog, the property of the
defendant, bit, killed and wounded ten sheep of the plaintiff,
without any averment that the defendant was acquainted with
the vicious propensities of the animal. Third count, substan-
tially like the second—damages claimed to one hundred dollars.
Plea, the general issue. The cause was tried by a jury, and
the plaintiff recovered $47,50. The defendant appealed to the
common pleas. On the trial in that court it appeared that the
farms of the parties were near together. In July or August,
1843, some of the plaintiff's sheep were on the defendant's land,
and a hired man of the latter went to drive them off, and the
defendant's dog, which was with him, chased one of the sheep
into the river and the dog swam after it, and on being taken out

the sheep appeared to have a scratch or other slight injury upon its jaw, whether from the bite of the dog or not did not appear; but the sheep thus injured joined the flock. The defendant had owned this dog, which was a *bull-terrier*, for about a year and a half previous to September, 1843, and in September he sold him to a person living out of the neighborhood. One Minkler worked on the defendant's farm during the summer and fall of 1843. He lived about two miles from the defendant's and lodged at home, coming to his work in the morning and returning at night. From June to September a dog owned by Minkler was accustomed to follow him to his work, remain on the defendant's premises through the day and return with him in the evening. Evidence was then given by the plaintiff to shew that about the middle of September the dogs belonging to the defendant and to Minkler were found together worrying and biting the plaintiff's sheep, and on examination soon afterwards several of them were found bitten, but none were at that time found dead. The plaintiff then proposed to prove that several of his sheep had been found dead between the first of July and the first of October, 1843. To this the defendant objected, but the court overruled the objection, and the defendant's counsel excepted. Proof was accordingly given to that effect, and it appeared that in August and September seven or eight of the defendant's sheep had been found dead, several of them having the appearance of having been bitten, and that others were found more or less badly injured, which recovered, and that some of these so killed and bitten were found in the same lot where the two dogs had been seen worrying them, soon after the dogs were seen with them. A witness was asked by the plaintiff what damage would be occasioned by having a flock of sheep chased by dogs. The defendant's counsel objected, taking the position that such proof would only be competent after it had been shewn that the plaintiff's sheep had been chased by a dog of the defendant, of whose vicious propensities the defendant had notice. The court overruled the objection. The defendant's counsel excepted, and the witness stated that he would not have dogs chase his sheep for half their

Auchmuty *v.* Ham.

value, it being his opinion that sheep never did well after such an occurrence. The plaintiff then proved the value of such sheep as he had lost; and after some other testimony, not material to be stated, the evidence was closed. The defendant insisted that if liable at all he was only chargeable for the injury done by his own dog, and not for that done by the dog of Minkler, for the acts of which he contended he was not liable under the facts proved; that there was no evidence from which the jury could find that any sheep were killed by his dog prior to September, and that he was not liable for the injury occasioned by his dog *chasing and worrying* the plaintiff's sheep, on account of the absence of any proof that he had notice of his vicious habits; and he requested the court to charge in conformity with these views. The court refused so to instruct the jury, but advised them, on the contrary, that the defendant was liable to pay for all the sheep of the plaintiff which had been killed or bitten by dogs between the first of July and the first of October, 1843, including what was done by the dog of Minkler, for which they said the defendant was liable on account of having had that dog in his possession; that the defendant was also liable for the chasing and worrying of the plaintiff's sheep by the two dogs, whether the defendant knew they would chase and worry sheep or not; the fact that the defendant had directed his hired man to chase the sheep out of the lot with dogs, being in the opinion of the court, equivalent to proof of actual knowledge of the evil disposition of the dogs, and that the plaintiff was likewise entitled to recover exemplary damages or " smart money." The defendant's counsel excepted to the refusal to instruct the jury as requested, and to every part of the charge actually given. The jury found a verdict for the plaintiff for sixty dollars, for which, with the costs, the court rendered judgment.

*Forbus & Maison,* for the plaintiff in error.

*John V. A. Lyle,* for the defendant in error.

*By the Court,* JEWETT, J. The common law holds the owner of a dog accountable upon the ground of negligence for any injury committed by him, by biting the person or cattle of another and the like, if he knew or had notice that the animal was accustomed to such or similar mischief. But without proof of knowledge or notice of such propensities the owner is not liable. (*Vrooman* v. *Lawyer,* 13 *John. R.* 339 ; *Hinckley* v. *Emerson,* 4 *Cowen,* 351 ; *Smith* v. *Pelah,* 2 *Strange,* 1264.)

An exception to the rule requiring such knowledge or notice of the mischievous habits of a dog in case of injuries by *killing* or *wounding* sheep, has been made by statute, (1 *R. S.* 704, § 9,) which provides that "The owner or possessor of any dog that shall kill or wound any sheep or lamb, shall be liable for the value of such sheep or lamb to the owner thereof, without proving notice to the owner or possessor of such dog or knowledge by him, that his dog was mischievous or disposed to kill sheep." The fifteenth section of the same statute declares, that any person may kill any dog which he shall see chasing, worrying or wounding any sheep, unless the same shall be done by the direction or permission of the owner of the sheep or his servant. By other provisions, the owner is required to kill such dog in a certain time, under a certain penalty. (§§ 16, 17, 18, 19.) The twentieth section, (*p.* 706,) declares that "Every person in possession of any dog, or who shall suffer any dog to remain about his house for the space of twenty days previous to the assessment of a tax, or previous to any injury, chasing or worrying of sheep, or any such attack made by a dog, shall be deemed the owner of such dog for all the purposes of this title."

The evidence shows that the plaintiff was the owner of a flock of sheep in the summer and fall of 1843; that several of them were during that time wounded and killed by dogs in the fields where they ran; that the defendant owned a dog, and one Minkler, a hired man of the defendant, but who kept house and resided some two miles distant from the defendant, owned another, which was in the daily habit of following him to and from his house to the defendant's premises where he labored; that these two dogs were seen in company in the act of wound

Auchmuty *v.* Ham.

ing or killing two of the plaintiff's sheep in September of that year, and on examining the flock and fields where they ran then or soon after, other sheep were found either dead or wounded, apparently the work of dogs. In July or August, the defendant directed his hired man to take his dog and chase the plaintiff's sheep out of his field into which they or some of them had come. It was done, and one sheep was frightened so that it ran through bushes and across fences into the river. It was got out by the defendant's man, and found to have suffered a small scratch on its jaw, but whether from the bite of the dog or from some other cause, does not appear. Several sheep soon after this were found dead in the fields. There is no evidence or pretence that the defendant had any agency in causing the dogs or either of them to do the mischief or any part of it, with the exception above mentioned. There is no evidence showing the defendant liable for any injury occasioned by either of the dogs under the rule of the common law. The plaintiff did not prove that the defendant knew or had notice that his dog was accustomed to bite, kill or wound sheep, or to do any similar mischief prior to the time the last injury was committed. It is argued that his directing his man to chase the sheep from his field with his dog, was evidence of knowledge that his dog was vicious in that respect. I cannot agree to this proposition. The rule requires evidence of the animal's possessing propensities which lead it, instinctively, to kill, wound, &c. for mischief. There was no such evidence in this case. But as to the *killing* or *wounding* of the plaintiff's sheep, the question of notice was not important, the defendant being accountable for the damage done by his own dog, although wholly ignorant of his mischievous propensities. So far as damage resulted to the plaintiff from his sheep having been *worried* by the defendant's dog, the rule of the common law applies; and prior knowledge or notice of such or similar mischief was requisite to be proved. I think that the court below decided correctly in overruling the objection to the admission of evidence showing the number and value of the sheep which the plaintiff lost by injuries committed by dogs in the summer and fall of 1843.

The more important question, however, is whether the court was right in determining that the defendant was responsible for the acts of Minkler's dog in biting and killing the plaintiff's sheep.    My opinion is that the charge in that respect cannot be sustained.    The statute declares that any person in *possession* of any dog, or who shall suffer any dog to *remain about his house for the space of twenty days* previous to any injury, &c. shall be deemed the owner, &c.    The evidence did not show that the defendant was in possession or that he suffered the dog which Minkler owned to remain about his house, in the sense contemplated by the statute, by which he could be deemed the owner of it.    The legislature evidently intended by this provision to cast upon any person, having possession, &c. for twenty days, of any dog, the ownership of it, and as owner to make him responsible for the commission of such injuries by such dog whether in fact such possessor was or not the owner, and there by to prevent persons from having the keeping or control of these mischievous animals for that length of time, without being responsible for such mischief.    This dog, so far as evidence was given, was at all times in the possession of Minkler, remaining with him during the day while he was laboring for defendant on his premises, and at night following him to his residence.

The court should have charged that the plaintiff was entitled to recover of the defendant the value of all the sheep of the plaintiff, which from the evidence in the case, they were satisfied the defendant's dog had killed or wounded, and that he was not accountable for such as Minkler's dog had killed or wounded, nor for any damage done the plaintiff's flock of sheep by other dogs than his own, nor by his own dog in worrying or chasing them, unless he had some agency in causing it to be done, or had knowledge or notice that his dog was addicted to such mischief; and that the fact that he had set his dog upon sheep in person or by his servant to drive them out of his field, was no evidence of such propensity of the dog, or of knowledge or notice within the rule of law.

The court below also erred in charging that the plaintiff was

entitled to "smart money:" that is, that the verdict should be increased beyond the value of the sheep, as a punishment to the defendant, for being so unfortunate as to own a dog which had done his neighbor such injury. The rule of damages is provided by the statute giving the remedy. To that the jury should have been instructed to limit the verdict. *Van Steenburgh* v. *Tobias,* (17 *Wend.* 562;) *Russell* v. *Tomlinson,* (2 *Conn. R.* 206;) *Adams* v. *Hall,* (2 *Verm. R.* 9,) are cases, where dogs which the defendants severally owned, joined in killing and wounding sheep of the plaintiffs, in which attempts were made to hold the owners jointly responsible for the injury. The court in each case held, that when the dogs of several persons, not jointly owned by them, do mischief together, each owner, is only liable for the mischief done by his own dog; and that the difficulty in ascertaining the proportion of damage done by each dog furnished no reason why one man should be accountable for the mischief done by the dog of another. The difficulty suggested in arriving at the true amount of damages under this rule will, I think, be found less formidable than seems to have been apprehended. The evidence in most cases would be such that an intelligent jury would be able to apportion such damages without doing injustice to either party.

The judgment below must be reversed: a *venire de novo* to issue to the Dutchess common pleas.

Judgment reversed.