Woodruff, J. (Dissenting.)
While I concur fully in the conclusions at which my brethren have arrived upon several of the questions raised by the appeal in'this case, there are others which are essential to the maintenance of the verdict herein from which I am constrained to dissent.
It is undoubtedly settled, by the decision of the Court of Appeals in Fosgate, et al. v. The Herkimer Manufacturing Co., et al, (2 Kernan, 580,) that the improper joinder of parties defendants, or of causes of action, must be taken advantage of by demurrer, or by an answer which raises the question of joint or several liability, or it will be deemed waived. The case cited was an action of ejectment and the complaint charged that the defendants “ unjustly withheld from the plaintiffs the possession of the premises,” etc. The answer denied “that the defendants, or any of them, unjustly withheld from the plaintiffs the possession of the premises or any part thereof.” The verdict found this issue in favor of the plaintiff, and the judgment properly followed the issue which the defendants had by one answer jointly raised. They had voluntarily rested their defence upon the question whether the defendants, or any of them, unjustly withheld from the plaintiffs the possession of the premises, and the jury found that they did so withhold, etc., and the court held that although upon the evidence each defendant may have been only liable in respect to such portions of the premises as he occupied in severalty, yet that, under those pleadings, proof that the defendants occupied in severalty was immaterial and irrelevant to any issue. They had rested their defence, not upon the nature or extent of their several occupation, but upon the denial that they, or any of them, withheld the possession, etc.
If the verdict in the present case, under the rulings had at the trial, can be brought within the rule established by that decision, then of course we should, so far as the objection herein rests upon *420 mere misjoinder of parties to the action, or of causes of action, order judgment for the plaintiff upon the verdict.
But where the complaint alleges facts which, if true, create two causes of action, upon one of which only each defendant is severally liable, and the defendants severally put in issue the facts charged, so far as they are respectively affected thereby, it does not follow, from the decision referred to, that each is to be charged with liability upon both causes of action. The omission to object, by answer or demurrer, that there is a misjoinder of parties, or oi causes of action, will prevent their raising that objection at the trial, but it does not subject either to a recovery against himself upon and for the several liability of the other.
When the liability charged in the complaint is charged upon both as a joint liability, and they think proper to unite in an answer denying that they or either of them are liable, they may, as in the case referred to, preclude themselves from entering at all upon the question, whether their liability is several or not, but this, at the utmost, is the extent to which, as I think, the court of appeals intended to go in their decision.
Suppose, for example, two are sued as makers respectively of two promissory notes, one signed by each, and they severally deny the making thereof, not having objected, by answer or demurrer, that they or the causes of action ought pot to have been joined in one action, perhaps the plaintiff may proceed to trial, and have judgment against each for the amount of the note made by him; self. But surely the omissipn to demur or set up the misjoinder by answer, does not warrant the judgment against either for the amount of the note made only by the other. The rulings at the trial, the instructions to the jury, and the judghient rendered, must be according to the several liability of each.
This illustration may or may not be like, the case disclosed in the pleadings and by the evidence on the trial of the present action. I give it for the purpose of stating the principle involved in it—whether the principle, if- correct, has any application to the case before us may be hereafter considered—and I, therefore, add that where the pleadings and proofs disclose a state of facts upon which the defendants are only severally liable for their own. separate acts or defaults, and neither for the acts or defaults of the other, and the defendants answer separately, denying each on his *421 own behalf his liability for the causes alleged, it is erroneous to charge upon each a responsibility for the acts ox defaults of the other, and proceed on the trial, in the verdict and by the judgment, as if they were jointly liable.
It is true that if, in the case before us, it shall appear that whether severally or jointly liable, each is necessarily liable, if at all, to precisely the same extent, and for the very same amount of damages, the question will become a question of form only in respect to this particular instance, except so far as the defendants were involved in a conflict with each other, which placed both defendants at disadvantage on the trial, and gave the plaintiff an opportunity to profit by the efforts of each defendant to charge the co-defendant with liability for the matter complained of. Whether the court can say that the effect of this "conflict was any thing more than to develope the whole truth, it is not necessary, under the -views I entertain of the other questions involved, for me to say. But if the liability of each defendant is precisely the same in extent and as to amount, and if for that reason the objection is wholly immaterial because no injustice is done, it should be disposed of as a question of form only. The substantial principle involved should be at least rightly-stated and the correct rule recognized.
And on the other hand, if in this case both defendants, though only severally liable, have in truth been treated as liable for the acts or defaults of each; and under the evidence they are not, as matter of law, necessarily liable to the same extent and for the very same sum as damages, and especially if there are facts which tended to show that one of the defendants was not liable at all, or that the one was liable on grounds which did not affect the other, and for which such other was not responsible; then the question whether the liability is joint or only several, becomes not only important in principle, but material to the defendants and vital to the maintenance of the verdict.
There are considerations which will be suggested tending to this view of the defendant’s situation in reference to the present verdict, and which have led me to the conclusion that if the defendants are not jointly liable, the verdict should be set aside, and so far as the conclusion of my brethren rests upon the ground that the defendants are so liable, it is to that extent, at least, an *422 important inquiry, vital, as I think), to the decision of the case before us.
After careful reflection, I am constrained to say, that upon the facts in this case, a joint action against these defendants cannot be maintained.
A fundamental principle lies at the foundation of all joint liability, and that principle is, that each of the parties charged is liable for the act or default of the other. This is no more and no less true in reference to joint liability in actions ex contractu than in those ex delicto ; in the former these parties are liable upon the saíne grounds, and for or in respect to the identical cause, and to the same extent.
And in actions ex delicto it is of the essence of joint liability, that the acts or defaults of each defendant are imputed to the other, as effectively for all purposes, as if they were the acts or defaults of himself; and the liability of each for the acts or defaults of the other, enters not merely into the extent of the liability of each, but into the very basis and ground of such liability.
And as respects the ground of liability in its bearing upon the question whether two parties are jointly liable, it makes no difference whether the action be trespass vi et armis (formerly so called) or trespass on the case for consequential damages. In the former case, each must be liable for the trespass which the other has committed, i. e., each must be liable for the other’s act. In the latter case, each must be liable for and in respect of the act or default of the other, from which the consequential damages have resulted.
It is in the very elements which constitute a joint liability, that the cáse before us is deficient,
There is nothing in the relation which the defendants bear to each other or to the present plaintiff, or to the injury which he has sustained, or to the cause of such injury, that subjects them to a joint action.
All that can be truly said, in my opinion, of the defendants is, that each company is liable for its own acts or defaults, or the acts or defaults of its own servants.
The very basis and ground of action here, is the negligence of the defendants’.seivants. By whatever name the actiou be called, (with reference to our former legal nomenclature,) whether trespass *423 or case, it is the negligence of their servants alone that makes the defendants liable at all. Had there been no negligence there would be no right of action. Even if the collision, with all its consequences to the plaintiff, had happened, there would have been no liability without such negligence.
How, however dif6.cult.to separate the consequences of the separate negligence of either defendant, yet each is liable, or responsible, in respect of its own negligence, and for its own negligence only.
The relation of the two companies to the plaintiff and to the alleged wrong are wholly different, and exhibit the defendants in an entirely several or separate character. '
A mutual violation of a joint duty makes both parties liable, and each liable for such violation by the other.
How there was no joint duty. The duty of the Hew York and Harlem Railroad Go. to the plaintiff arose from their undertaking to carry him. The only duty owed to him by the Hew York aud Hew Haven R. R. Go., was a duty which they owed to all mankind, so to conduct their business that no one should be injured by their culpable act or neglect.
The nature and extent of the duties of the companies respectively was different. The Hew York and Harlem R. R. Go. was bound to exercise the highest prudence, and the utmost care and skill, which was, under the circumstances, practicable, and which the most prudent person would use for the safety of those entrusted to them for carriage.
The Hew York and Hew Haven R. R. Go. were only bound (in their relation to the present plaintiff,) to exercise ordinary care and prudence, in view of the nature of the business in which they were engaged, and the circumstances in which they were acting.
So, also, defendants uniting in a joint act are liable jointly for the injury caused thereby.
But if there be no common purpose, the act is not joint unless there is an actual union of the parties in the act complained of; indeed, the actual union of the parties in the act complained of, in general creates a joint liability, because such actual union is evidence of the common intent. But if it were conceded that in such case it would be none the less joint because there was no intent to do the act, when, in truth the act is single, and-both parties act *424 together in it, still, if such a case can be supposed, it would fail to illustrate the present case, for here it is not an act, but a neglect, that constitutes the ground of liability. In this there is no union of the parties if the common intent be wanting.
The neglect of the one company is not here the neglect of the other; nor had the one any agency in producing the neglect of the other. The negligence of either is, as a ground of liability, entirely independent of the other, not causing, nor tending to cause, the negligence of the other.
If either are liable for the collision and its consequences, it is not because the collision and its consequences are a ground of legal liability, but because the collision resulted from the negligence—that, and that only, being the ground of liability. The circumstance that the consequence of the several neglect of the two defendants produced one result, to wit, the collision, is a merely incidental and casual coincidence, and does not alter the nature or essential character of the cause to which the liability is to be referred.
So there is joint liability for an act or acts done by each in furtherance of a common purpose. This is clearly so when there is a common intent to injure. It may, however, be conceded that, (even in the absence of an intent to injure) the liability is joint if the injury result from an act or acts done in execution of their concurring intent to do, or to omit to do, precisely what was done or omitted. Here no such ground of liability is even claimed. Each company was prosecuting its own separate business, with wholly distinct and unconnected purposes, in no wise contemplating the act or default of the other, and, indeed, in ignorance of the acts or neglects of the other, until every thing had been done or neglected which involves them in liability at all.
Again, there may be a joint liability for the negligence of either, when both are at the same time engaged together, each contributing to the accomplishment of a common design. It is not necessary to seek illustrations of this proposition or to define strictly the narrow limits to which it must be confined. Instances might be suggested that would come within the definition, and yet in which such joint liability would not result, and others in which it would clearly follow. But here there is no claim, and can be none, that there was any common intent or purpose-whatever.
*425 In the cases above supposed, the defendants are mentioned as if acting or neglecting in their very persons, and not by agents or servants; and in some of the cases stated there might be no liability at all by the principal, for the acts supposed, if done by servants; but it is not material to my purpose to discriminate, as the propositions are stated merely to define the ground of joint liability and the contrary.
Here, the ground of the liability of each being negligence, each is liable for the fault of their own servants, and only for such fault.
And the companies were acting wholly independently of each other.
They were not discharging any common obligation to the plaintiff.
They violated no common duty.
The fallacy in the claim that the liability is joint results from regarding the collision as the ground upon which the defendants are to be charged. It is not in respect of the collision, which is itself a consequence, but in respect of the negligence that caused a collision, that either are hable.
The culpa causans is separate in respect to each, and whether injury results concurrently or not, cannot change their relation to each other. The fact of liability for the consequence exists, in a strictly logical sense, prior to the consequences themselves. The consequences are only considered in determining to whom and to what extent that liability subjects them.
The fallacy is rendered more easy of adoption from what is the peculiarity and only incidental feature of the present case, viz., that the injury sustained by the plaintiff is single, so that it is impossible to say how much of the injury resulted from the negligence of the one company, and how much from that of the other. This, certainly, cannot alter the principle upon which the liability of the parties depends. Its only result may be, that in an action against either, the defendant may, ex necessitate be subjected to the whole consequences of the occurrence.
Suppose that, instead of injuring a person, the respective colliding trains had, upon the occasion in question, injured some inanimate object of value interposed between them, but so that the injury-received from the- force of-the one train could be distin *426 guished from the injury received from the force of the other. Can it be doubted that each company would be liable for the injury done by its own train, and for that injury alone? I think not.
Each would be liable for negligently and violently running its train against the object injured, and for the injury thus produced. In principle, I think the present case is not different.
In neither case is either liable for the negligence of the other, nor, in principle, for the consequences of the negligence of the other.
The views above expressed find corroboration in some cases, which I mention briefly:
In Guille v. Swan (19 J. R. 381) the defendant, an aeronaut, had ascended in a balloon, and descended into the plaintiff’s garden. When he descended his body was hanging out of the car in great peril, and he called for help in a voice audible to the crowd, who were pursuing. They broke down the plaintiff’s fences, and came to the defendant’s relief, doing damage; and the defendant was held liable for the whole trespass. The court, denying that the defendant was free from liability for the acts of the crowd, merely because he. did not intend that they should commit the trespass, or because his descent in that place, and its consequences, were wholly involuntary, say, “ To render one man liable, in trespass, for the acts of others, it must appear either that they acted in concert, or that the act of the individual sought to be charged ordinarily and naturally produced the acts of the others.”
In Williams v. Sheldon, (10 Wend. 654,) which was an action against eight defendants, for cutting and carrying away logs from plaintiff’s lot, there was evidence to show that the defendants did not all work together, nor share alike in the profits of the spoliation. The rule of liability governing the case is declared to be this: “ To entitle the plaintiff to recover against all the defendants as joint trespassers, it must appear that they acted in concert in committing the trespass; if some aided and assisted the others, —or some employed the others—or assented to the trespass committed by the others, having an interest therein, all are jointly guilty. But if any were acting separately, and for themselves alone, they are not jointly liable with the others.”
The case of Van Steenburgh, et al. v. Tobias, (17 Wend. 562,) and Auchmaty v. Ham, (1 Denio, 495,) appear to me to bear very strongly upon the case under consideration. The first was an'ac *427 tion against two defendants, each of whom was owner of a dog, to recover against them jointly for the injuries done by the two dogs to the plaintiff’s sheep. The injury was done by the two dogs at the same time, both uniting in the mischief. The court held that the action would not lie; that the case showed only a separate trespass, or wrong, against each defendant’s dog.
The case of Russell v. Tomlinson, et al., (2 Conn. 206,) precisely similar, is cited with approbation, and the language of the court in that case is adopted: “ Owners are responsible for the mischief done by their dogs, but no man can be liable for the mischief done by the dog of another, unless he had some agency in causing the dog to do it. Each owner is liable for the mischief done by his own dog.”
In Auchmaty v. Ham, the Judge at the trial had charged that the defendant was liable for the injury done by two dogs, though he was the owner of one only. The judgment was reversed, and the court held that each owner is only responsible for the mischief done by his own dog. They notice a feature in the case which is also characteristic of the case now under consideration, and refer with approbation to the above cases, and to Adams v. Hall, (2 Verm. R. 9,) where they say “ the difficulty in ascertaining the proportion of damage done by each dog, furnishes no reason why one man should be accountable for the mischief done by the dog of another.”
It is a familiar and well-settled rule, that a joint action cannot be maintained against two for slander, by words spoken by each. And yet, if the concurrence of the tWo acts, or neglects, complained of, and the difficulty of separating the injury produced by each, so as to say how much of the damage was imputable to either, were any sufficient reason for making the liability joint, it would be easy to suggest many cases of slander, under circumstances that would warrant its action; for when there be slander by several, it may be wholly impracticable to determine how much of the injury which is sustained in loss of good name results from the slander by one, or how much by the slander of the other; and it is generally clear, that when two or more conspire together to injure another, by defaming his character, they become jqintly liable. .Each is liable for the act of the other, done in pursuance of the common intent. This distinction in reference *428 to slander by two or more, illustrates the proposition that, when the acts are several, the liability depends upon the question whether there is a common intent or purpose.
Suppose two separately and falsely represent a person to another as worthy of credit; in reliance upon the representation of both, he sells such person goods; and suppose it be true that no such sale would have been made had not the representation by the one been corroborated by the like representation by the other, I deem it quite clear that no joint action will lie, without proof that the defendants conspired together to procure the credit, and effect’the deceit.
In what I have said in relation to the necessity of showing a concurring purpose to sustain a joint action against the defendants, it is not intended to insist that where two or more unite in an act of trespass, the motive or intent with which they commit the act is material. The act may be committed in the belief that what is done is lawful, and be none the less a joint trespass, and, in the language of the court in Guille v. Swan, above cited, “where an immediate act is done by the co-operation or the joint act of several persons, they are all trespassers and may be sued jointly or severally, and any one of them is liable for the injury done by alland although, in that case, the defendant was held liable for the acts of others, though wholly without wrongful intention on his part, it was because his act would ordinarily and naturally produce, and did produce, the acts of the others.
In the present case the liability of neither defendant is founded in any act of the defendants or of either of them, but in negligence only, and the negligence of either in nowise tended to produce negligence in the other.
It is, doubtless, true that when a negligent act is the immediate and direct cause of an injury, the action of trespass vi et armis would lie. It was so held in Percival v. Hickey (18 J. R. 257). That was a case of gross negligence on the part of the defendant m person, in running down the plaintiff’s vessel; but allowing to a plaintiff that form of action did not change the essential ground of the defendant’s liability. That was his negligence, without that he was not liable, although the plaintiff’s vessel was run down. In order of proof it might be sufficient to show that his vessel was run down by another in the charge of the defendant. But when *429 all the facts were developed, the defendant’s liability, in whichever form the action was brought, rested on his negligence in managing his vessel.
It in nowise follows that if the negligence of another person in managing another vessel, wholly independent of the first, without any common purpose, concert or connection, had, by mere coincidence, contributed to the disaster, a joint action of trespass or a joint action in any form could have been sustained against them.
It is by treating the collision as the forcible act warranting the action of trespass, and the defendants as actors in the collision itself, that it seems plausible to say the defendants have co-operated in producing the injury and are, therefore, jointly liable. I have already said that to say that either defendant is liable to this plaintiff, on the ground that their trains collided, is fallacious. They are liable, if at all, because, and only because, of their several negligence, which resulted in the collision, and in that negligence there was not any community between them. Besides this, the case referred to, and those cited therein, which authorize a plaintiff, at his election, to sue in case for consequential damages for the negligence, or in trespass for the direct and immediate cause of injury, are cases where, in truth, the defendant was present acting in the very matter, and if not so present, but the act resulted only from the negligence of his servant, case only would lie against him.
In every aspect of the rule, it seems to me that whatever form of remedy may be resorted to, it is negligence only which is the ground of his liability. But the suggestion last made brings into view another reason for denying the liability of the defendants to a joint action, which is quite conclusive, and this is that in an action against a master for an injury resulting from the negligence of his servant, no action of trespass would lie. The action is for consequential damage, and is founded in negligence only. The case last above referred to exhibits this rule in many of the cases mentioned therein, and others might, if necessary, be added. It is not obvious to my mind that one master under the form of a joint action can be made liable for the negligence of another man’s servant, over whom he has no control, whom he has not selected, with whom he has (in the matter in which the servants are employed) no connection, and whom but for the negligence of his *430 own servant there could be no pretence that he was liable for that of the other.
I can understand how a man may be properly responsible for the negligence of his own servant and for all its consequences, but that the coincidence of that negligence, with the negligence of another man’s servant, should make him responsible for the negligence of the latter, as if the action be joint he must be, I do not understand and cannot concede.
True it has been held that a corporation is, in some cases, liable in trespass, for acts which, in one sense, it does by its servant. So may an individual be liable in trespass for acts of his servants, done by his command or in which he aided, or for trespasses which are the immediate and direct consequence of the servant’s obedience.
A corporation can, in one sense, only act by agents and servants; but it can and does exercise strictly corporate acts, and in them it acts or speaks as truly as does an individual in his proper person, and for them if done or authorized to be done it will be liable as an individual is liable. Whatever, in the mode the law of its organization prescribes, the 'corporation does or authorizes, is the act of the corporation itself, and may doubtless be the subject of the same modes of redress as if it were the act of an individual.
But the negligence of its servants is not such an act; if it be conceded that they are liable as an individual would be under like circumstances, it proves nothing in this case, for, as above suggested, the ground of the liability of an individual, would be that as master he is liable, consequently, for and because of the negligence of his servant, and only upon that ground; and the observation therefore recurs, they are not liable for the negligence of the servants of another corporation, pursuing a distinct, inde-i pendent employment, engaged in the performance of a separate duty, with whom they have no connection, and over whom they have no manner of control.
I am aware that ingenuity might suggest examples in which it would be difficult to say whether the liability of two persons is joint or only several, or rather cases, where the only proofs which could probably be given, would render it difficult to apply this rule. As where two men, each in pursuit of his own private revenge, or for the gratification of his own malice, strike another *431 at the same time, without concert or even knowledge of the other’s intention; or two men at the same moment apply fire to another’s house in different places, each in like ignorance of the acts or doings of the other, and it burns down. Other examples might be suggested, and often the coincidence of time, place, and act, would raise a presumption of a common purpose; and it may often, where the acts are clearly several, be practically impossible to say exactly how much damage is caused by the wrong of one defendant and how much by the fault of the other.
But such cases furnish no reason for a departure from principle.
I cannot resist the conclusion that a joint verdict against the present defendants cannot, or I should more properly say, ought not to be sustained. _ ;
I cannot concur in the opinion that the Judge was correct in charging that “ the negligence of a plaintiff that goes to excuse the defendants, must be such negligence as contributed to the accident that caused the injury.”
In another form the proposition is stated thus: “the general rule is, that where a party by his own negligence contributes to bring about the occurrence by which the injury is effected, he cannot recoverand lest the meaning of “ occurrence” should be misunderstood in this instruction, it is added by way of explicit direction, “standing on the platform of the car could in itself have had no effect in producing the collision by which this injury was effected; of itself, therefore, it would be no defence to the company in case of an accident occurring.”
By this, the jury were given to understand, that however gross the negligence of a person may be in exposing himself to injury, if that negligence does not contribute to the other cause of injury, it is no bar to the plaintiff’s recovery, however true it may be that if the plaintiff had exercised ordinary care he would have received no injury.
I do not so understand this rule; examples may be suggested yrhich illustrate its error.
A foot passenger in the streets of a city, where the sidewalk is safe and convenient, voluntarily exposes himself by walking in the carriage-way; another negligently leaves his horse unattended an4 ill secured. The horse runs away and overturns a vehicle *432 upon the negligent passenger, who is unconscious of his approach. The negligence of the latter neither causes nor contributes to the running away of the horse nor to the overturning of the vehicle: can he recover damages for his injury ?
Again, while thus carelessly passing along the street, in utter disregard of the dictates of ordinary prudence, two vehicles, by the negligence of some other persons, are brought in collision, and he is injured, by the overturning of one vehicle, or by its being thrown against him. His being in the carriage-way “ could in itself have had no effect in producing the collision by which the injury was effected.” Does it, therefore, form no obstacle to a recovery of damages ?
Again, one is loitering carelessly upon and about the tracks of a railroad, when, by some negligence, a car is overturned upon him. Such negligence of the victim certainly does not contribute to the accident, in the sense in which the term accident is used in this charge; it did not produce, nor tend to produce, the overturning of the car; does it furnish no reason for leaving him to bear the consequences of his own folly ?
I apprehend the inquiry is, whether his injury is attributable to his own carelessness; whether his negligence contributed to his hurt?
The relative duties which mankind owe to each other, do not proceed upon the idea that any are infallible. All may err; and no one should ask indemnity against his neighbor’s unintentional mistake, where, but for his own carelessness, he would not have been injured thereby.
In the case under consideration what caused the injury ? "Not the negligence of the one defendant alone. But for the negligence of the other, there had been no accident. Not the collision alone, (if the plaintiff’s standing on the platform was negligence,) for if the plaintiff had exercised ordinary prudence, he would have received no harm.
The plaintiff here says, and the charge adopts his claim, “No matter how negligent I was, if there had been no collision I should not have been hurt, and I did nothing tending to produce a cob lision.”
The New Haven R. R. Co. may retort with equal plausibility, no matter how negligent we were, if you had not been upon the *433 platform you would have sustained no damage, and we in nowise consented or contributed to your needless exposure to injury.
==" The causes of this injury are threefold. If it was an act of negligence in the plaintiff to ride upon the platform, there were three parties contributing to the injury. The injury may, with equal propriety, be said to be the consequence of the negligence of either, and it was clearly the result of all combined.
It is claimed that, even if there be inaccuracy in the instruction referred to, the special finding of the jury relieves the case from any claim that injustice was done to the defendant, by rendering the same result inevitable had the charge, in this particular, been free from liability to criticism. That the jury have found that there was no seat for the plaintiff inside the car on which he stood, and no time was afforded him, after he got upon the platform, to find a seat in another; and, under the general instructions in the charge, the jury may be assumed to have found that he was not forbidden to stand where he was. I admit that there is force in this suggestion; but there was evidence tending to show that, in truth, these facts had nothing to do with the conduct of the plaintiff in this respect. The defendants gave evidence that the plaintiff was a commuter—a “ constant rider’’—that the front car wa| usually full when the train reached the station at which h'e was in the habit of getting on; that there was room in the rear car; that he was in the habit of riding on the platform daily. The inference from the evidence is very strong, that he rode there from no necessity, but from choice—from a foolish desire to be on the foremost car at all hazard.
It by no means follows from the verdict that he had not abundant reason, from the habitual state of the train in which he daily visited the city, and the usual course of filling the forward cars before" his station was reached, to know that there was room enough (as in fact there was) in the rear cars; nor that he had not time enough, and opportunity enough, to have entered those cars at the station where he got upon that train. The request of the defendants to the Judge, to charge that it was his duty to do so, if he had that knowledge of the usual" condition of the train to know where to find the vacant seats, seems to me reasonable, and that the defendants might require such instruction to be given.
It is suggested that the case of Carroll v. The New York and *434 New Haven R. R. Co., sustains the views expressed in the charge in this case. Doubtless there are some things in the opinion in the case which seem to conflict with the views I have expressed. That case does not, I think, go so far as the propositions I have been considering. That case rested, in no slight degree, upon the supposed consent of the defendants to the plaintiff’s riding in the baggage car. The defendants are deemed not only to have waived the benefit of the statute, but to have virtually conceded to the plaintiff the propriety of his riding in the place and manner in which he was riding.
Perhaps a still more important feature in that case was, that in the conduct of the defendants’ servants there was gross negligence, and not only gross negligence in itself, but towards a person to whom they were under a clear legal duty to exercise the utmost care and caution; and the collision arose from two trains of the same company, running in opposite directions, coming in contact.
/X* I by no means insist that the want of ordinary care on the part of a passenger will justify or relieve a railroad company from liability for gross neglect, evincing a reckless or wanton disregard for the life or safety of their passengers.
In the aspect last suggested, the case of Carroll v. The New Haven and New York R. R. Co. is not in principle unlike the more recent case of Williams v. The New York and Harlem R. R. Co., in which it was held, in the Court of Appeals, that even though the plaintiff had carelessly gone upon their track, or had, through negligence, fallen thereon, it was not error to charge that “ if the driver could have stopped the car before it went over him, the plaintiff was entitled to recover.” In that case, the proof was clear that the driver saw him; and the court held, that his neglect to stop the car, when it was in his power to do so, after he saw the peril to which the plaintiff was exposed, was an act of gross, wanton, and even reckless disregard of human life.and safety, and could not be excused by the imputation of negligence to the plaintiff.
With the principle of these cases, my view of the question in this case does not conflict. There is here, upon the evidence, no just ground for imputing gross negligence to the defendants. The case was not submitted to the jury upon any such idea; and the general doctrine that, in the absence of gross negligence, the plaintiff, in order to recover, must be clear of any negligence on his *435 own part contributing to the injury complained of, is not at all questioned in the case last referred to.
The considerations which appear to have influenced the charge to the jury, here arising from the omission of defendants (the Harlem Company,) to post the notices required by the statute in the passenger oars; their neglect to delay at the station where the plaintiff entered the train till he was provided with a seat; their omission to furnish proper and suitable accommodations for the plaintiff inside the cars, were all presented to the jury as material questions affecting the defendants’ liability, and connected with them was the duty of that company to exercise the utmost care and prudence to protect their passengers; and these considerations are,' in effect, made to bear directly upon the question of the liability of the other defendant, who had no concern therewith, and who ought not to be in any manner affected thereby.
This illustrates what has already been suggested of the impossibility of joining the two defendants in the same action, or more strictly, in the present state of the pleadings, the impossibility of a joint verdict and judgment against'the two defendants.
And whatever may be said of the Harlem R, R. Co., founded upon their neglect to provide proper seats, or put up proper notices, surely the New York and New Haven Company are not responsible for this; if this negligence aggravated the fault of the Harlem Co., the plaintiff should be turned over to them for redress. The New Haven Co. may, and do, with none the less force and propriety, refer to the plaintiff's negligence as causing his own injury, when they truly say to him that but for your folly the injury would not have been received.
I cannot resist the conviction, that these corporations engaged in great public enterprises, tending in a high degree to the pu'unu good, conducting their business necessarily at a very considerable hazard, as well from its nature ás from the demand of the community upon them in respect to promptness and speed; wholly unable to carry on the business at all except by employing agents and servants in a considerable number, and, therefore, exposed to suffer from their failure to use at every moment the utmost possible prudence and foresight, I say I cannot resist the conviction that, while they are, probably, held to a stringent rule, and required to use extraordinary means to protect human life, they *436 are also entitled to require at least ordinary care from those they transport. That there is, in this respect, some slight reciprocity of duty which binds the passenger to take care that when an accident does happen, its consequences are not aggravated by his own negligence and folly.
However this may be, as between the passenger and the company who undertakes to carry him, and guarantees to him all the security which human skill and foresight, properly exercised under such circumstances, would provide, it is saying only what appears to me to have often been held, and properly held, that as to those who owe him no such high and peculiar duty, he cannot claim to recover where he has, by his own negligence, contributed to his hurt.
Upon any other view of the subject, the plaintiff might have voluntarily placed himself in the most exposed condition of the Harlem train, nay, even upon the engine itself, and if through any negligence, however slight, on the part of the New Haven Company, they had caused a jar sufficient to throw him to the ground and injure him, he could recover. He could even in such case say, as the plaintiff was by the charge permitted successfully to say here, “ my being on the engine, however dangerous however it exposed me to peril, did not cause the jar which caused me to fall.”
My conclusion is, that no joint verdict and judgment is proper in this case, and also, that the joint verdict which was rendered, was obtained under instructions which were erroneous as to both of the defendants, but which were especially so as to the New Haven Railroad Company, as well as respects their liability to a plaintiff, who was himself guilty of negligence, as also in charging upon them a liability which if it existed as" to the other defendant, resulted from the peculiar relations of the latter to him, and their omission of duty in particulars over which the New Haven Company had no control, to which they in no raapner contributed, and for which they are not liable.
I think, therefore, that a new trial should be ordered,