Ashburn, J.,
dissenting. Not agreeing with my brethren as to the first, second, and third propositions, I will give my reasons.
The alleged error arises upon an instruction asked by Boyd, — refused; and the instruction given by the court in place of the one asked.
Charge asked and denied.
The defendant asked the court to charge the jury, that “ the defendant was only liable for damages to the plaintiff occasioned by intoxication produced by the intoxicating liquors which the defendant himself had sold to said Dr. Watt, and that the defendant was not liable for any damages produced by the intoxication of said Dr. Watt occasioned by intoxicating liquors sold to him during said period by other persons,” which charge the court refused to give except as qualified herein.
*272 So much, of the charge given in place of the one overruled was:
“If you can separate the damages resulting from the intoxication caused by illegal sales to Watt by defendant from the damages resulting from sales by otherspyou must do so; but if such separation can not be made, you will render your verdict against the defendant for all the actual pecuniary damages • resulting to the plaintiff in person, property, or means of support, by-reason of the intoxication of said Joseph Watt, to which intoxication the illegal sales of intoxicating liquor by the defendant contributed. You will aAvard exemplary damages, however, against the defendant only for his own wrongful acts, and not for the wrongful acts of others.”
Defendant excepted to the entire charge and every part thereof.
The plaintiff, in her petition, alleges that her husband, Dr. Watt, died in September, 1869; that from the month of April, 1865, to about the time of his death Boyd sold him intoxicating liquors in quantities from a pint to a quart; caused him to become intoxicated, and an habitual drunkard. In consequence he neglected his business and squandered his estate. She had to provide for herself, and was injured in her means of support.
The charges in the petition are such as to lay the foundation for the assessment of the two-fold damages provided for in the statute : viz., compensatory and exemplary.
The jury returned, a verdict in favor of the plaintiff for two thousand five hundre'd dollars. Was the instruction given to the jury in lieu of the one asked and refused the law of the action ? I think not.
The action was prosecuted under the Ohio liquor law of 1854. Section 3 provides, “ that it shall be unlawful for any person ... to sell intoxicating liquors to persons intoxicated or who are in the habit of getting intoxicated.” . . .
Eor the violation of this section a person may be indicted, fined, and imprisoned.
*273 Section 7 provides, “ That every wife . . who shall be injured in person or property or means of support by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, such wife . . shall have a right of action in her own name against any person who shall, by selling intoxicating liquors, contrary to this act, have caused the intoxication of such person, for all damages actually sustained as well as exemplary damages.”
The charge of the court complained of, relates only to the question of assessing “ damages actually sustained,” and not to exemplary damages. The rule as to the assessment of exemplary damages was narrow, and not calculated to injure Boyd, whilst the rule given them by which in case of difficulty they should estimate and assess actual or compensatory damages was too broad and uncertain, calculated to mislead the jury, and oppressive.
To render the defendant liable for damages under the provisions of this statute, when correctly construed, he must, under section 3, be guilty of a crime in selling intoxicating liquors to one then intoxicated, or to one in the habit of getting intoxicated. Criminal liability is the foundation for a civil liability; then, under section 7, before liability arises, there must not only be an unlawful sale to one then intoxicated, or one in the habit of getting intoxicated, but, he, by his sale of intoxicating liquor “ in violation of this act,” must have caused the intoxication, in consequence of which she sustained “ actual ” damage toller means of support. And, as the law now stands in-Ohio, his criminality for violation of section 3 must be made to appear beyond a reasonable doubt, as a basis for' civil liability in damages. Boyd’s criminality being made to appear beyond a reasonable doubt, damages may be assessed upon a preponderance of proofs. The person charged must not only be guilty of violating the criminal provision of the statute, but must be criminally responsible-to the extent that he caused the intoxication by and in consequence of which a party is damaged. The statute does *274 not say if he shall contribute to the intoxication of a person and another is damaged thereby he shall be in some event responsible for all damages. Does it mean this ? Is that the responsibility intended by the statute ? The court answers in the affirmative. This is not the language of the statute, nor, in my opinion, is it the meaning.
To hold one person responsible for the criminal acts of another, in the absence of a statute to that effect; in the absence -of all question of conspiracy or confederation, appears to mo to be a violation of the cardinal principles of law and justice. The charge to the jury, given in this case over the -objection of Boyd, did that, unless I am mistaken in the force of the instruction given and the construction of the statute. It will not be controverted that- this statute is an ■innovation upon the common-law rights and liabilities. It is no statutory embodiment of an old right, but creates a •new cause of action and provides an unusual remedy. Such statutes, unless the intent otherwise clearly appéars ■from the statute, should be strictly construed, and limited iin their operation to the express words, when they are clear. No canon of construction authorizes the court to indulge in presumptions as to what such statutes mean. Courts are not authorized to legislate an intention into a statute. They must take it as they find it, not adding to nor subtracting from it.
Smith, in his work on statutory construction, page 830, -says : “ "When the object of the legislature is plain, and the words of the act unequivocal, courts ought to adopt such a -construction as will best effectuate the intention of the lawmakers ; but they must not, even in order to give effect to what they may suppose to be the intention of the legislature, •put upon the provisions of a statute a construction not supported by the words, even although the consequences should be to defeat the object of the act.” This is cited as authority in the case of Woodbury v. Barry, 18 Ohio St. 456.
Chief Justice Tenterdon (6 B. & C. 475) says : •“ There is ¡always danger in giving effect to what is called the equity *275 of the statute, and it is much safer and better to rely on and abide by the plain words, although the legislature might possibly have provided for other cases had their attention been directed to it; ” would have provided, as in the Adair law, by express words that he who causes the intoxication, in whole or in part, shall respond to all the damage caused.
Chief Justice Marshall, in The United States v. Witterberger, 5 Wheat. 76, says: “ The intention of the legislature is to be collected from the words they use. Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one indeed, which would justify a court in departing from the plain meaning of the words, especially in penal acts, in search of an intention which the words themselves did not suggest.” The same rule is laid down in The American Fur Co. v. The United States, 2 Pet. 358; The Commonwealth v. Loring, 8 Pick. 370. It may be said this is a civil action. True. But the damages to be assessed are in the nature of a penalty, awarded by reason of the violation of a criminal law, and should be construed strictly within the intent of the legislature as expressed in the words of the statute.
It is supposed, this clause of the Adair law. was inserted to put at rest an open question — one about which thei;e was much difficulty and difference of opinion in different parts of the state. This may be the case, or it may not. I suppose the change had a more substantial foundation. The statute of 1854 held him, and him alone, responsible in damages, who criminally violated the statute, and in doing so caused the intoxication of the person who did the damage. Caused does not mean to contribute (a partial agency), but rather to- produce a result — to be the direct occasion of a result. The law-making power should, by the courts, be presumed to know the meaning and effect of the language they use; and when they so changed the language and terms of the statute as to make the person who “ caused the intoxication, in whole or in part,” responsible for all resultant damages, they intended some *276 thing more than to settle difference of opinion. They intended to remedy what appeared to them a defect in the law.
The words “ contrary to this act” were eliminated from the provisions of the amended section 7. "Why was this done ? In order that the action for damages be founded upon civil and not criminal responsibility. The legislature saw the impropriety of making a person responsible for all the damages consequent upon his causing the intoxication, “ in whole or in part,” and basing his liability upon a criminal liability of another or others, when there was no concert of action or agreement among the criminal actors. Hence, the words “ contrary to this act” were left out of the amended section.
We are not wholly without authority upon this question, growing out of the construction of statutes somewhat similar to this. I find in 1 W. L. M. 198, a case throwing some light upon the principle involved in this action. It was the case of Sawyer et al. v. Jewett et al., in the District Court of Lake county, held by such eminent judges as Ranney, Wilder, Day, and Clarke, three of whom have occupied places in the Supreme Court, and discharged their high and responsible duties with distinguished ability. It was an action for injury done to sheep by dogs. It had formerly been' considered that owners of dogs were only liable for the, actual damage done by their own dog. To remedy this supposed defect in the statute, in the amended or new statute was inserted the words “ or any of them.” Ranney, J., in the opinion of the court, says: “ The lawmakers, by the introduction of the words “ or any of them,” meant .something. What was it? They intended to make each owner liable'for all the damage done by all or any of the dogs. And with good reason. For it was found that when two or more dogs worried sheep, it was utterly impossible to trace out the injuries inflicted by each. Hence, the owners of sheep were, in many cases, remediless.”
In the case of Auchmuty v. Ham, 1 Denio, 495, it was held: “ Where dogs belonging to several owners are found *277 in company engaged in killing sheep, each owner is responsible for the injury done by his own dog, and for no more.” In this case, the trial court instructed'the jury that the defendant was liable to pay for all the sheep of the plaintiff' which had been killed or bitten by dogs between the first of July and the first of October, 1848,” against a contrary instruction asked by defendant — “ that he was only chargeable for the injury done by his own dog,” etc. The court by Jewett, J., said: “ The court should have charged that the plaintiff' was entitled to recover of the defendant the value of the sheep.of the plaintiff which, from the evidence in the case, they were satisfied the defendant’s dog had killed or wounded; and that he was not accountable for such as Miukler’s dog had killed, nor for any damage done the plaintiff’s flock of sheep by other dogs than his own,” etc. Page 500.
"We may refine upon these authorities, and distinguish them from the principles of the case under consideration, until we are satisfied they are dead and buried, and then, like the ghost of the dead Thane, they will come up and assert their identity in principle, and boldly demand recognition. It was lawful to own dogs. The owners became responsible only when their dogs worried sheep or killed them. Under the old statute, the owner was only responsible for the actual damage done by his dog. When this could not be ascertained, the injured party was remediless. So, under this law, it is lawful for a person to sell intoxicating liquors under restrictions. He becomes responsible in damages only when he causes intoxication in violation of law. When the actual compensatory damages can not be ascertained, the injured party is remediless.
As I read this statute, in the light of the canons of construction, before this defendant can be called upon for damages, he must have caused the intoxication of Dr. Watt, by selling to him intoxicating liquors under circumstances that made him criminally responsible for such sale. This statute does not, by word or intent, contemplate that one person shall he criminally responsible for the acts of others in *278 the absence of confederation. It may be and is otherwise as to trespassers. But in cases where the civil liability springs out of a criminal responsibility, a person, in answering for his own wrongful act, can not be lawfully held to answer, in damages, for the criminal acts of others. Yet the charge given to the jury in this case over the objection of Boyd, made him conditionally liable for the wrongful acts of others; even more, responsible for the criminal acts of, perhaps, unknown persons. The charge made this conditional liability to rest upon the, ability of the'jury, from the proofs in the action, to determine in dollars the value of the wrongful acts of Boyd. If, from a preponderance of the proofs on the question of the amount of damages sustained by Mrs. Watt, the jury were unable to determine the actual amount of damage occasioned by the wrongful act of Boyd, then, in that case, they might lawfully charge Boyd with the unnumbered sins of unnumbered persons for a series of years — from 1865 to Dr. Watt’s death in 1869. I can not think the statute will bear the construction given to it by the Court of Common Pleas. If the legislature had intended such a result, such purpose would have been more clearly expressed.
I will illustrate the practical effect of the charge given to the jury, as I understand it. A, on the 1st day of January, 1868, sold a pint of whisky to Dr. Watt, who paid for it — Mrs. Watt needed that money to buy bread; on the 10th of January, B sold brandy to Watt, and for which he paid the money, and Mrs. Watt needed that money to pay for meat to eat; on the 20th of January, 0 sold a quart of whisky to Watt, and received money in payment, and on the 80th day of January, the defendant sold Watt spirituous liquors for cash, .and Mrs. Watt needed that money to purchase raiment for herself. On each occasion Watt became intoxicated, and wasted so much of plaintiff’s means of support as he expended money in the purchase of the liquor, and loss of time while so intoxicated. Mrs. Watt prosecutes an action against the defendant for damages to her means of support. The court instructs the *279 jury: “If you can separate the damages resulting from the intoxication caused by illegal sales to Watt by defendant from the damages resulting from the sales by A, B, and C, you must do so; but, if such separation can not be made, you will render your verdict against the defendant for all the actual pecuniary damages resulting to the plaintiff in person, property, or means of support, by reason of the intoxication of said Joseph Watt, to which intoxication the illegal sales of intoxicating liquor by defendant contributed. You will award exemplary damages, however, against defendant only for his own wrongful acts, and not for the wrongful acts of A, B, and C.” If the charge does not mean this, then I am unable to discover its meaning. If a charge is so uncertain that it is likely to mislead the jury, the judgment should be reversed.
It is claimed that the case of Henry D. Stone v. William Dickinson, 5 Allen, 29, supports the views taken by the majority of the court. I am of a different opinion. In that case, nine writs for the arrest of plaintiff were sued out by nine different persons, who, separately and without concert, and, without knowing.they were using the same agent, placed them in the hands of the same person, and caused plaintiff to be arrested. The plaintiff brought several suits for compensation. The court held that having used a common agent, and made but a single arrest, they were joint trespassers, and a satisfaction from one of them was a bar to an action against the other joint trespassers. The court assimilated the case to a common-law joint action for trespass. The reasons of the court for doing so may or may not be sound. How would the case have stood if the agent who made the single arrest under all the writs had, at distinct hours of the day, or on different days, arrested the plaintiff? Would the several arrests have been a joint trespass ? Certainly not. The judge puts the ■ case upon the fact: “ It is only one wrong, for which in law he can receive but one compensation. He has not in fact suffered nine separate arrests, and undergone nine separate imprisonments,” etc. This case will only be analogous to the one *280 tinder consideration when it shall occur that nine separate liquor venders shall put nine parcels of intoxicating liquors into the hands of an agent, but without concert of action or knowledge that they are employing the same person, and shall cause the nine parcels of liquor to produce a single case of intoxication, from which damages arise, and the common agent by so doing is rendering each of his principals liable to a criminal prosecution.
This charge is erroneous in another respect. Two distinct rules were given to the jury for the assessment of damages. They were told in a certain contingency, when assessing “ actual pecuniary damages,” to look to the wrongful acts of defendant and others, and from them, in the aggregate, determine the plaintiffs damages to her means of support; but when the jury come to assess exemplary damages, they could look only to the defendant’s wrongful acts, and not the wrongful acts of others. This rule for assessing exemplary damages is sound law, but it serves to show the error in the other part of the charge. To me the doctriue is strange that the field of facts from which compensatory damages in a given case can be collected is broader than that from which punitive damages may arise.