## DANIEL WESTGATE

### *v.*

## DANIEL CARR.

1. TOWNSHIP ORGANIZATION — *powers of towns in relation to stock — fences — penalties.* Under the township organization, the electors of each township, at their regular town meeting, have the power to restrain or prohibit cattle, etc., from running at large; to authorize the distraining, impounding and sale of the same for penalties, and to determine the time and manner in which such animals may go at large. Power is also given to make rules ascertaining the sufficiency of fences, and to determine what shall be a lawful fence within such town. Power is further given to impose such penalties for a violation of any by-laws of the town, except those relating to the keeping and maintaining of fences, as the town may think proper.

2. SAME — *trespass — fences — stock running at large.* Under the general law of this State, as construed in *Seeley* v. *Peters,* 5 Gilm. 130, cattle have a right to go at large, and the owner of a field upon which they may go has no right to recover for damages unless his field was inclosed by a good and sufficient fence. But this law, as thus construed, did not impose the duty of fencing as a positive obligation. It simply withheld the common law right to recover damages in cases where there was not a sufficient fence, and this on the ground that the cattle were rightfully at large.

3. SAME. The general law upon the subject of stock running at large has been so modified by the township organization act, that it is no longer of universal application. Each township, in counties which adopt the township organization law, is expressly authorized to regulate this subject for itself; and, when a town has, under this legislative authority, established rules upon this matter inconsistent with the general law as construed in *Seeley* v. *Peters,* that law, in such towns, ceases to be applicable.

4. TRESPASS — *stock running at large — fences.* Where townships have adopted rules prohibiting stock from running at large, and there are no regulations requiring fences, the owners of cattle will be liable for injuries occasioned by their stock going upon unfenced fields.

5. SAME. The right of private damages rests upon the familiar principle, that every person is responsible in damages for all injuries to others occurring from his illegal acts.

6. PARTIES — *joint liability.* Where the cattle of two several parties go upon the field of another, and injure his crops, a joint action of trespass cannot be maintained against them. Each owner is separately liable for the injuries done by his own stock.

APPEAL from the La Salle County Court.

This was an action of trespass, commenced before a justice of the peace, by Daniel Carr against Daniel Westgate, to recover for injuries occasioned to his crops by the cattle of the latter.

The trial before the justice resulted in a judgment for the defendant. On appeal to the County Court, the plaintiff recovered a judgment for $35.83. The defendant appealed to this court.

The facts are sufficiently stated in the opinion.

Messrs. O. C. GRAY and D. L. HOUGH, for the appellant.

Messrs. CHARLES H. GILMAN and BUSHNELL & AVERY, for the appellees.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was an action of trespass, originally brought before a justice of the peace, to recover damages done by the cattle of Westgate to the growing corn of Carr. The field was without a fence, and the plaintiff claimed damages only for injuries done in the night-time. To sustain this claim, he introduced in evidence the town records of the town of Ophir, in which the field was situated, by which the town had adopted a by-law, or ordinance, prohibiting animals to run at large at night. It was in the following words:

" *Resolved*, That cattle and calves, horses and colts, shall not run at large except by day-time from the 15th of April to the 1st of December of each year, after this date; penalty to be one dollar for each offense; and that the money arising from said fines shall be appropriated, after paying for prosecution, to buy plank for road purposes, in such district where the animals are taken up.

" April 5, 1859."

This ordinance was in force at the time of the alleged trespasses, and it was clearly proven, that defendant's cattle had run at large at night between the 15th of April and the 1st of December, and had done damage in the plaintiff's corn.

It is urged, by the counsel for the appellant, that, notwithstanding this ordinance, the want of a fence relieved the defendant of liability. The argument is, that, by the general law of the State, a good and sufficient fence is required in order to enable the owner of a field to maintain trespass, as decided in *Seeley* v. *Peters*, 5 Gilm. 130, and that this general law cannot be repealed by a township ordinance.

The sixth section of the seventh article of the Constitution directs the general assembly to provide, by a general law, for a system of township organization, and to submit the question of its adoption to the vote of the people of each county. This has been done, and the law has been adopted in some counties and rejected in others. The consequence is, that, in the same State, we have two systems of local self-government, radically unlike each other, and, in many important matters, leading to the adoption of different and even opposite rules. But these incongruities in our local law spring directly from the provision of the Constitution which permits each county to determine for itself what system it shall adopt. Under the township organization law, many subjects are remitted directly to the popular decision, which, but for the adoption of this system, would be left under the exclusive control of the legislature. And this result must have been intended by the framers of the Constitution, because it is well known, that such is, and always has been, the township system in those older States from which ours was substantially adopted. It was known to be popular government reduced to its simplest form — legislative power exercised by the popular vote of the municipality. The argument in its favor was, that each community could best determine for itself what was demanded by its own interest in matters of purely local concern, and that the town meeting where these matters were determined, trained the people to the proper exercise of civic duties. Acting on the theory which

underlies the system, the legislature has given to the people of. each township power over many subjects which, so far as relates to counties not adopting township organization, are left to the exclusive management of the legislature.

Among the subjects thus committed by the legislature to the decision of each township for itself, are the running at large of cattle, and the sufficiency of fences. Section 5, of article 4, of the township law of 1861, grants to the electors of each town, at their annual town meeting, among many other powers, the power to restrain or prohibit the running at large of cattle, horses, mules, asses, hogs, sheep or goats, to authorize the distraining, impounding, and sale of the same for penalties, and to determine the time and manner in which such animals may go at large. Power is also given to make rules for ascertaining the sufficiency of fences, and to determine what shall be a lawful fence within such town. Power is further given to impose such penalties for a violation of any by-law of the town, except those relating to the keeping and maintaining of fences, as the town may think proper.

Under this act, the town of Ophir adopted the by-law, forbidding cattle to be allowed to run at large at night, and we are at a loss to understand by what language the legislature could grant the power to enact this by-law, if it be not grated in the foregoing provisions. It is urged, that only the power to impose penalties is given, and not the right to prosecute a private action for damages. But the penalties are imposed in behalf of the town, and to secure obedience to its laws. The right to private damages rests upon the familiar principle, that every person is responsible in damages for all injuries to others accruing from his illegal acts. The question in this case was, whether Westgate's cattle were lawfully at large when they entered in the night Carr's field of corn. The decision in *Seeley* v. *Peters* proceeds solely on the ground, that the defendant had the right to allow his cattle to roam at large. But in this case the defendant had not that right, and the application of the same principles which discharged the defendant in that case, would make him liable in this. The injury for which this

suit is brought, arose directly from Westgate's violation of law, while Carr has violated none, for there was no law requiring him to fence his field. Under the general law of the State, as construed in *Seeley* v. *Peters*, cattle have a right to go at large, and the owner of a field upon which they enter shall have no claim for damages, unless his field was inclosed by a good and sufficient fence. But this law, as thus construed, did not impose the duty of fencing as a positive obligation. It simply withheld the common law right to recover damages in cases where there was not a sufficient fence, and this, on the ground that the cattle were rightfully at large. But this general law has been so far modified by the township organization act, that it is no longer of universal application. Each township, in counties which adopt the township organization law, is expressly authorized to regulate these subjects for itself; and when a town has, under this legislative authority, established rules upon this matter, inconsistent with the general law as construed in *Seeley* v. *Peters*, that law in such towns ceases to be applicable. Under the regulations or by-laws of the town of Ophir, cattle could no longer rightfully roam at large in the night, during certain periods of the year, and the obligation to protect fields by a sufficient fence against their entry at night, during such periods, necessarily ceased. The evidence offered in regard to the condition of the plaintiff's fence was, therefore, properly excluded.

It is urged, that the court erred in excluding the docket of a justice of the peace, offered by the defendant for the purpose of showing the plaintiff had recovered a judgment against one Sproule for the same injuries to his corn by Sproule's cattle, for which this suit was prosecuted against Westgate. The docket was excluded because identified, not by the justice, but by some third person. The reason assigned may not have been a valid one, but the exclusion was nevertheless proper, because the proposed evidence was wholly immaterial. It mattered not what injuries had been done by Sproule's cattle, or what damages Carr may have recovered against him for such injuries. Westgate was liable for injuries which the proof might show

had been done by his own cattle, even though damages for the same injuries had already been improperly recovered from Sproule. If the cattle of both Sproule and Westgate had been trespassing, they were not jointly liable; and if, in a former suit, a jury had assessed against Sproule, any portion of the damage done by Westgate's cattle, a wrong had been done to Sproule, but this did not extinguish the liability of Westgate. The suit against Sproule could not be retried in the present case, for the purpose of showing that damages for which Westgate only was liable had been improperly assessed against Sproule. If the latter chose to acquiesce in an unjust verdict, it was his own affair, and could not aid Westgate. The simple question in this trial was, What damage did the evidence show to have been done by Westgate's cattle to Carr's corn?

On this question the docket of the justice could shed no light. It was proper, in order to prevent the jury from presuming all the damage in the corn to have been done by Westgate's cattle, to allow him to prove that other cattle were in the field, and ranging on the adjacent prairie, with, of course, the same opportunities for entering the field which Westgate's cattle had, and this proof he was allowed to make. The verdict was for thirty-five dollars and eighty-three cents, and the evidence shows, this verdict could not have been designed to cover all the damage done in the field, which was proved to be much greater, but must have been found upon the testimony showing how many times Westgate's cattle had been seen there, and the number of the cattle, and the quantity of corn they would destroy in a night.

The only objection seriously urged to the instructions relates to the question already considered — the effect of the town by-law, and on that subject nothing further need be said. The case was properly submitted by the court to the jury. The judgment is affirmed.

*Judgment affirmed.*