# J. C. BULPIT
## v.
# T. J. MATTHEWS.

*Trespass—Stock—Common Law Rule—Illinois Rule.*

1. At common law the owner of cattle was required to keep them on his own land or respond in damages for their trespasses.

2. It seems that the early rule in this State required a person farming land to protect his crops with a good and sufficient fence from cattle lawfully running at large.

3. It also seems, that when township organization was adopted and townships given power to prohibit the running at large of stock, in case of all townships that did so prohibit it, the rule last referred to ceased to be applicable, and the owners of stock became liable for their trespasses as at the common law.

4. This court holds that the act of July 1, 1874, concerning the running at large of stock, abrogated the Illinois rule, and that by its force and effect, the common law rule at once revived.

[Opinion filed December 3, 1891.]

APPEAL from the Circuit Court of Christian County; the Hon. JACOB FOUKE, Judge, presiding.

Messrs. J. C. McBRIDE and JOHN G. DRENNAN, for appellant.

In 1874 an act was passed entitled, " An act to revise the law in relation to permitting animals to run at large," which provided a penalty against those who should suffer their animals of the species of horse, mule, etc., to run at large. Revised Statutes, Chapter 8, Section 1. This statute applied only to those who suffered or permitted such animals to run at large, and had no application to such animals escaping against the will of the owner and without his fault or negligence, as in this case at bar, and set forth in the said propositions of law submitted to the court. Kinder v. Gillespie, 63 Ill. 88; The Town of Collinsville v. Scanland, 58 Ill. 221.

In the case of Frederick v. White, 73 Ill. 590, the right of recovery was based squarely upon the fact that defendant suffered his stock to run at large repeatedly. " If no reasonably prudent man would have foreseen this result, then the appellant could not be liable, even had the bull broken out without any fault of appellee or her agent. Only reasonable effort to restrain the bull [horses] was required." Weide v. Thiel, 9 Ill. App. 226.

It has been held that this statute did not relieve railroad companies from fencing their roads. O. & M. R. R. Co. v. Jones, 63 Ill. 472.

In the enactment of this statute the legislature did not pretend to relieve owners of land from fencing the same.

In the revision of 1874 this section 20, of chapter 54, Illinois Statutes, upon which appellant bases his action, was retained, which provides :

" If any horse, mule or ass, or any neat cattle, hogs or sheep, or other domestic animals shall break into any person's inclosure, the fence being good and sufficient, the owner of such animal or animals shall be liable, in an action of trespass,

to make good all damages to the owner or occupier of the inclosure. This section shall not be construed to require such fence in order to maintain an action for injury done by animals running at large contrary to law."

Applying any reasonable rule of construction, this section means simply, that the owner of stock shall be liable for all damages where the owner of the inclosure has it surrounded by a good and sufficient fence, and makes one exception only, and that is that the fence shall not be necessary to maintain the action if the stock is running at large contrary to law; but in all other cases the fence is absolutely necessary to entitle the owner of the premises to recover damages. Applying this rule, as laid down by our Supreme Court and above cited, as to what constitutes a running at large, there must be some act of permission, omission or negligence by the owner of the stock before such stock can be said to be running at large contrary to law. It may be contended, as it was on the trial below, that all stock at large, regardless of the circumstances of their escape, are running at large contrary to law. Such is evidently not the meaning of this section upon which appellee seeks to recover, for if it were, the section would simply provide that any horse, mule, etc., entering upon the inclosure of another, the owner of such animal should make good all damages to the owner or occupier of such inclosure, and would not need the qualification, "the fence being good and sufficient," or proviso that, "this section shall not be construed to require such fence in order to maintain an action for injuries done by animals running at large contrary to law," both of which are contained in the section referred to, and we submit that to adopt the construction contended for by appellee would be a reflection upon the legislature adopting such language to express its meaning; and we ask the court to bear in mind that the chapters "In relation to animals running at large," and "In relation to fences" were both revised in 1874, and are to be considered together and of equal dignity in construing them, and the construction that will permit both statutes to remain should be adopted. It is clear that the construction suggested by appellant allows both to remain; any other repudiates one of them.

Messrs. RICKS & CREIGHTON, for appellee.

The evidence shows that at the time in question the horses and mules of appellant got out in the night and were upon the lands of appellee and witness Overton. The gate was open. Part of them were put back in the pasture in the night, and after breakfast those put up were out again, the gate still closed and the riders off near the gate.

We think the fact that this stock got out and damaged appellee's corn, with the agreement as to damages, makes the case for him. In McCormick v. Tate, 20 Ill. 334, the court say: "By the common law every man was bound to keep his cattle on his own land or respond in damages for their trespasses." And it was one of its rules that no man is bound to fence his close against an adjoining field, but every man is bound to keep his cattle in his own field at his peril.

And if the common law is in force in this State, the above is a sufficient answer to the labored argument of counsel for appellant, that he is not liable because he did not permit or suffer his stock to run at large, or was not guilty of negligence in the common acceptation of the term. Seely v. Peters, 5 Gilm. 142, is cited and relied upon by appellant.

Mr. Justice Pillsbury, in Lee v. Burk, 15 Ill. App. 651, uses the following language: "Sec. 1, of Chap. 8, of the Revised Statutes of 1874, changes the rule declared in Seely v. Peters, by prohibiting the running at large of cattle in the absence of a vote of the people of the county allowing them to do so. We think the effect of this statute is to practically re-enact the common law upon the subject, and that now in this State, in any locality where no vote has been had, every man must keep his cattle from his neighbor's premises or respond in damages for injuries committed by them." And in Birket v. Williams, 30 Ill. App. 45, substantially the same language is used by Mr. Justice Lacey in rendering the opinion of the court.

But counsel for appellant seeks to dispose of the last two cases with two assertions:

1.   That Sec. 20, Chap. 54, R. S., was not considered in them.

2.   That they are only binding in the particular cases.

Bulpit v. Matthews.

As to the first assertion, we reply that Sec. 20, Chap. 54, was not considered in this case, and ought not to be; that section applies to those counties only where certain animals may lawfully, by vote of the people, run at large, and the exception applies to bulls, jackasses, and such animals as can not be lawfully at large.

To the second assertion, we say that if the principle upon which those cases were decided is correct, they are binding on all courts. And the eminent source of their enunciation assures us that they are well founded.

If it were clever in counsel to advise the court that appellee's case is based on Sec. 20, Chap. 54, R. S., 1874, it strikes us as unkind in them to then try to deprive us of the solid foothold we have maintained with this case through two courts, and it reminds us very much of the child that built the cob house that he might have the pleasure of knocking it down.

Kinder v. Gillespie, 63 Ill. 88, The Town of Collinsville v. Scanland, 58 Ill. 221, and Weide v. Thiel, 9 Ill. App. 226, are cited by appellant in support of the proposition that he is not liable unless guilty of negligence, or unless he suffered his stock to run at large. These cases were cited and insisted upon in Birket v. Williams, *supra*, and the court, on page 454, says of them : " The most of the cases cited are where a penalty is sought to be recovered, and have no application; the case above cited in 9 Ill. App., arose under a special statute against bulls running at large, and has no application." Frederick v. White, 73 Ill. page 590, and O. & M. R. R. Co. v. Jones, 63 Ill. 472, cited upon the same proposition, need only to be read to determine their inapplicability.

Boggs, J. This action of trespass was begun by appellee against appellant before a justice of the peace to recover for damage done to appellee's crops by horses and mules of the appellant, and came by appeal into the Circuit Court, where a judgment for $17.85 was rendered against appellant, to reverse which he brings the record to this court.

It was stipulated upon the hearing below, that appellee had no fence about his premises, and that the appellant had his horses and mules in a pasture which was surrounded by a

good and sufficient fence, and that without fault or negligence on the part of appellant they escaped from the pasture to an open common adjoining it, and from thence strayed onto the premises of appellee, and damaged his property in the sum of $17.85.

Aside from these stipulated facts, it appeared in proof that appellant permitted those living west of his farm, including appellee, to pass through this pasture when going to and returning from the town of Edinburg, gates having been placed on the fences to enable such persons to pass and repass. These gates had been placed there partly at the request of appellee, and under an agreement which appellant claims relieved him of liability for the damages sought to be recovered. The only testimony concerning this agreement is that of the appellant, which is as follows:

Question: "You may state what use was made of that gate through which the mules passed."

Answer: "Well, when I closed up that pasture it closed up the passage for Matthews, and he could not get to Edinburg or east on his place, and when he found my fence he came to me and said: 'I don't want to be shut out. I will take hold and help you put in a gate for the privilege of passing through there.'"

Question: "Is that the plaintiff in this case?"

Answer: "Yes; and he done so, with the understanding that he should watch the gate, and if stock, owing to careless persons, got out, he was to turn them back."

A large common adjoins the appellant's pasture on the west, and the premises of appellee adjoin this common on the south and one-fourth of a mile west of the west fence of appellant's pasture field.

The stock escaped from the pasture in the night time, and came upon the commons, and a portion of them from thence into the field of a witness, Overton, who testifies that he that night chased two of the mules back to the gate of the pasture, which he found open, and drove them into the pasture and shut the gate.

The next morning Overton returned to the gate, but could

not tell from the tracks whether the stock had got out through the gate or not. He testified that "something had been going on at Edinburg," and that a great many persons passed through the pasture and gates that day and night. He found that morning that two of the rails of the pasture fence called riders had been knocked off near the gate, and afterward on the same day he saw on the premises of the appellee the same two mules he had driven in the night from his premises back into appellant's pasture.

Appellant urges a reversal of the judgment upon two grounds:

1. That he is not liable for damages done by his stock which escaped, without his fault or negligence, from his pasture, which he had surrounded by a good and sufficient fence.

2. He insists that the proof shows that the stock got out through the gate which had been left open without his fault or negligence, and that appellee, under the agreement concerning the gate, could not recover damages done by stock so escaping.

The appellant's position upon the first proposition is that the owner of stock, if he has them within a good and sufficient fence, and is guilty of no fault or negligence himself, is not in law liable if the stock escapes and destroys the property of another; that the loss in such case must fall upon the one whose property is destroyed. We think this position is not tenable.

At common law the owner of horses, mules, cattle, etc., was required to keep them on his own land or respond in damages for their trespasses. (The owner, says 3 Blackstone's Commentaries, 211, is answerable for the trespasses of his stock as of himself.)

Our Supreme Court in Seely v. Peters, 5 Gilm. 130, declared that this common law rule requiring the owner to keep his stock in his own field, was not suited to the then condition of our country, nor to the wishes, habits, or desires of our people, and that, as our legislature had by various enactments, such as requiring fields to be inclosed with a good and sufficient

fence, "providing a penalty for driving stock from the range where it usually run," etc., "authorizing the pasturing of cattle if found at large between November and April," and other similar acts, manifested clearly that the law-making power did not regard the rule applicable or existing. It was decided that such rule was not in force here, but on the contrary, that the person farming land must protect his crop with a good and sufficient fence against stock which might lawfully run at large. This conclusion was reached by a majority only of the court. Its soundness was vigorously combated by Justice Caton, who argued in a dissenting opinion that the rule in question was of a general nature, and unless it was inapplicable to the character of our political institutions, and to the genius of our form of government and our constitution, was in force in Illinois as a part of the common law until repealed by the legislature.

Afterward in Headen v. Rust, 39 Ill. 191, when the correctness of the holding in the Seely case was directly challenged by counsel, it was said that the interpretation had been so long accepted and acquiesced in by our people, and conformed to by all classes of the community, that no good purpose could be subserved by overruling the decision even if it did not seem the most reasonable and consistent to the rules of construction, and that therefore the court would abstain from discussing the question of whether the conclusion reached was such as would be announced if the question was for the first time before the court. It must, therefore, be conceded that the rule so laid down was the correct one, and if it be still the rule the position of the appellant is correct. This rule, however, rested solely on the ground that the owner of stock had the right to allow them to roam at large, and having such right the duty of protecting crops by good and sufficient fences, so that stock could not injure them, was cast by law upon the person farming the land. As long as this right existed the rule established by the Seely v. Peters case continued, but if the right be lost, the rule would also cease because the rule was founded alone upon the right.

Thus when township organization was adopted and town-

ships given power to prohibit the running at large of stock, it was held that as to all townships that did so prohibit it, the rule created by the decision in the case of Seely v. Peters ceased to be applicable, and the owners of stock became liable for their trespasses as at the common law.   Westgate v. Carr, 43 Ill. 450.

The General Assembly by an act in force July 1, 1874, made it unlawful for stock of the kind in question to run at large, unless under certain exceptions which do not arise in this case, and by its force and effect, in our judgment, the rule announced in the Seely case and other cases resting on it for authority ceased, and the common law rule that every man must keep his stock on his land or be answerable for their trespasses, at once revived.

The Circuit Court therefore properly refused the propositions of law presented by appellant, which declared a contrary doctrine.   The appellant in support of his proposition that he can not be held liable unless guilty of some fault or negligence, cites Kinder v. Gillespie, 63 Ill. 88; Collinsville v. Scanlan, 58 Ill. 221, and other cases.   When these cases are considered carefully it will be found that the doctrine announced by them is, that the owner of stock can not be subject to the infliction of a fine or payment of a mere penalty if his stock escape from his inclosure without his knowledge and he is diligent in endeavoring to recapture them.   Upon the question of whether the owner is liable for damage done by the stock to property of another, these cases have no application.

The remaining ground upon which appellant urges a reversal is that appellee, when he found that appellant's fence had been built, said to him, " I don't want to be shut out.   I will take hold and help you put in a gate for the privilege of passing through the pasture;" and that he did so, with the understanding that he (appellee) should watch the gate, and if the stock, owing to careless persons, got out, he was to turn them back.

The only reasonable effect to be given to this scant and meager statement of what appellant deems to be an agreement, is that appellee was to, and did, help construct the gates

and that he said something from which appellant understood appellee would, if the gates were carelessly left open, turn back in the pasture any stock that escaped.

It would not be reasonable to believe from the little we know of what was said by appellee that he agreed to " watch " the gate day and night, and see that the stock did not escape.

If appellee had left the gate open, or had he known that it was open, possibly he ought not be permitted to recover; but there is no proof, or even claim so far as we know, that appellee was guilty of any negligence or fault whatever.

The evidence, it is true, tends to show that the stock got out through an open gate, but many persons had passed through it that day and night, and it would be unreasonable to hold that appellee should answer for the acts of others, who equally with him enjoyed the privilege of going through the pasture.

Moreover, a portion of the injury and damage to appellee was caused by the two mules returned by Overton to the pasture, and they escaped, as the evidence tends most strongly to show, by knocking the riders from the fence, and it is possible they all got out in the same manner.

We think the court properly refused to hold appellee was precluded from recovering damages because of the conversation and understanding testified to by appellant. The judgment must be affirmed.

*Judgment affirmed.*