WATSON ET AL., RESPONDENTS, *v.* COLUSA-PARROT
MINING & SMELTING COMPANY,
APPELLANT.

(No. 1,981.)

(Submitted November 10, 1904.   Decided January 10, 1905.)

*Torts—Nuisances—Continuance by Purchaser of Premises—
Notice to Abate—Pollution of Streams—Apportionment of
Damages—Injury to Crops—Injury to Land—Evidence—
Opinion Testimony—Value—Witnesses—Cross-Examination
—Conflicting Instructions.*

Mining and Reduction—Nuisances—Pollution of Streams—Liability.
 1.   Where a nuisance arises from the individual acts of different mining and reduction companies, which have discharged deleterious and poisonous matter into the waters of a creek, and the injury is not caused by the joint acts of defendant and any other corporation, each company is liable to the person injured for the damage caused by its own wrongful acts, and none other, and the full damage must be apportioned among all the wrongdoers.

Mining and Reduction—Pollution of Streams—Damages—Difficulty of Ascertaining.

2. The mere fact that it is difficult to determine what part of the damage was occasioned by the acts of the defendant mining and smelting company, in an action for damages for injury to lands by the pollution of a stream, it appearing that other like companies contributed to the injury, is no objection to the relief asked.

Torts—Evidence—Conjecture—Jury.

3. Competent evidence must be produced of all facts, necessary to a recovery of damages in actions upon torts, upon which the jury may base a reasonably reliable conclusion, and nothing must be left to mere conjecture.

Pollution of Streams—Measure of Damages.

4. The measure of damages for permanent injury to land, resulting from the poisoning of the waters of a stream, whereby its value for agricultural purposes is absolutely destroyed, is the difference between the value of the land prior to the injury and its value after the injury.

Pollution of Streams—Complaint—Evidence—Waiver.

5. By failing to introduce evidence in support of an allegation that damages had been caused by pollution of water so as to render it unfit for a particular use, recovery is waived thereon.

Pollution of Streams—Damages Recoverable—For What Period.

6. Where several years elapse before a total and permanent injury to lands for agricultural purposes by the pollution of a stream is completed, the owners are entitled to recover damages for the yearly injury to their crops caused by the continuing nuisance, until the land was so totally and permanently injured; but no damages are recoverable for damages to the crops after such permanent injury.

Pollution of Streams—Injury to Lands—Pleadings—Proof.

7. In order to permit a recovery for injury to crops and for permanent injury to the land on which the crops were raised, it should be distinctly and unequivocally alleged and proven on what date the permanent injury to the land took place, how much of the land was permanently injured, and the annual injury to crops prior to that date.

Pollution of Streams—Injury to Lands—When Suit May be Brought.

8. In order to recover damages, resulting from a nuisance, for total and permanent injury to land, caused by pollution of a stream, such injury must have been completed before suit can be brought.

Pollution of Streams—Damages Recoverable—By Whom.

9. Owners of agricultural lands cannot recover for injuries arising from a destruction of crops, by reason of pollution of the waters of a stream, prior to the date when they acquired title to the lands, unless they were then in possession or entitled to possession thereof.

Continuing Nuisances—Predecessors in Interest—Who Liable for Damages.

10. A person continuing a nuisance is not liable for damages caused by the operation of the nuisance by his predecessors in interest, but redress must be had in an action against such predecessors for damages prior to the date when he went into possession.

Pollution of Streams—Non-Expert Witness—Opinion Evidence.

11. In an action for damages caused by the pollution of a stream, testimony of non-expert witnesses as to the effect of the water on land and crops is not objectionable as opinion evidence.

Non-Expert Witnesses—Opinion Evidence.

12. When a non-expert witness has shown himself qualified to express an opinion upon the matter in issue, his testimony is not objectionable.

Opinion Evidence—Competency of Witness.

13. Before opinion evidence on the question of value is admissible, the court must pass upon the competency of the witness.

Pollution of Streams—Witnesses—Cross-Examination.

14. In an action for damages caused by the pollution of a stream, a ques-

tion asked a witness, who produced a sample of water from the stream, as to whether he did not know that the sewerage of a city was dumped into the stream at the place where he procured the sample, should have been allowed on cross-examination.

Evidence—Written Contract—Contents.

15. Before evidence of the contents of a written contract can be admitted, the absence of the original agreement must be accounted for.

Continuing Nuisances—Abatement—Notice.

16. Under Civil Code, Section 4554, it is not necessary to give notice to one who continues a nuisance, to abate it, before bringing suit for damages arising therefrom.

Results of One's Acts—Knowledge—Presumptions.

17. Every man is charged with the knowledge of the results of his own acts.

*Appeal from District Court, Deer Lodge County; Welling Napton, Judge.*

Action by J. W. Watson et al. against the Colusa-Parrot Mining & Smelting Company for damages arising out of injury to lands and crops by reason of the discharge of poisonous and deleterious matter into a stream. From a judgment and an order denying a new trial, defendant appeals. Reversed.

*Mr. Jesse B. Roote, Mr. W. A. Clark, Jr., Mr. W. M. Bickford,* and *Mr. Geo. F. Shelton,* for Appellant.

*Mr. S. C. Herren,* and *Mr. I. G. Denny,* for Respondents.

MR. COMMISSIONER. CLAYBERG prepared the opinion for the court.

Appeal by defendant from a judgment and an order overruling its motion for a new trial.

Plaintiffs claim to be the owners of certain agricultural lands situated on Deer Lodge river below defendant's concentrating, smelting and reduction plant, and allege that defendant has polluted the water of Silver Bow creek, a tributary of Deer Lodge river, by the operation of its plant, to such an extent as to render such waters unfit for irrigation or domestic use; that the refuse and deleterious substances deposited in the stream by defendant have accumulated on their land and injured their crops, and have rendered the soil unproductive and sterile, per-

manently injuring the same. They pray judgment for $5,000 for deprivation of the use of the waters for domestic purposes for five years, for $5,000 for injury to and destruction of their crops during the same time, for $10,000 for permanent injury done their land by defendant, and for an injunction against the further pollution, and for costs and general relief.

Defendant, by answer, denies most of the allegations in the complaint; admits that defendant for a period of over five years has operated a concentrating, smelting and reduction plant at a point upon one of the tributaries of the stream above plaintiff's land; admits that since the year 1897 defendant has so operated said plant, and that the waters flowing therefrom "have been impregnated with and have carried away tailings and other substances, and refuse matter produced in and resulting from such smelting operations, and that such tailings and other refuse matter have been carried by the said waters and deposited along the course of said stream and of Deer Lodge river, into which said Silver Bow creek flows, and upon the banks thereof wherever said waters have been accustomed to flow"; and alleges that it is lawful for it so to do. As an affirmative defense, defendant sets forth the prescriptive right to commit the acts above stated. It then pleads Section 29, Code of Civil Procedure of 1887, Sections 484 and 524, Code of Civil Procedure of Montana, Subdivision 1, Section 513, Code of Civil Procedure, as amended by House Bill 75, Session Laws 1901, page 157, as defense by way of the statutes of limitation. The plaintiffs, by replication, deny all the affirmative allegations of new matter contained in the answer.

1. Under the facts disclosed by the record it is apparent that the nuisance complained of as causing the injury for which damages are sought arose from individual acts of different mining and reduction companies operating mines and plants in the city of Butte, whereby they have discharged deleterious and poisonous matter into the waters of Silver Bow creek, a tributary of Deer Lodge river; that the nuisance was merely incidental to and the result of such acts; and that the injury was

not caused by the joint acts of defendant and any other corporation or person.

Under the following authorities the defendant was liable to plaintiffs for whatever damage it caused by its own wrongful acts, and none other: *Chipman* v. *Palmer*, 77 N. Y. 51, 33 Am. Rep. 566; *Harley* v. *Merrill Brick Co.*, 83 Iowa, 73, 48 N. W. 1000; *Sellick* v. *Hall*, 47 Conn. 260; *Loughran* v. *City of Des Moines*, 72 Iowa, 382, 34 N. W. 172; *Martinowsky* v. *City of Hannibal*, 35 Mo. App. 70; *Little Schuylkill Nav. Co.* v. *Richards' Adm'r*, 57 Pa. 142, 98 Am. Dec. 209; *Miller* v. *Highland Ditch Co.*, 87 Cal. 430, 25 Pac. 550, 22 Am. St. Rep. 254; *Brown* v. *McAllister*, 39 Cal. 573; *Westgate* v. *Carr*, 43 Ill. 450; *Partenheimer* v. *Van Order*, 20 Barb. 479; *Lull* v. *Fox & Wis. Imp. Co.*, 19 Wis. 100; *Brennan* v. *Corsicana Cotton-Oil Co.*, (Tex. Civ. App.) 44 S. W. 588; *Van Steenburgh* v. *Tobias*, 17 Wend. 562, 31 Am. Dec. 310; *Auchmuty* v. *Ham*, 1 Denio, 495; *Keyes* v. *L. Y. G. W. & W. Co.*, 53 Cal. 724; *Sloggy* v. *Dilworth*, 38 Minn. 179, 36 N. W. 451, 8 Am. St. Rep. 656.

Defendant could not be held to respond in damages for the entire injury occasioned to plaintiffs by the nuisance complained of, because confessedly it only contributed to this injury. The full damage, therefore, must be apportioned among all the wrongdoers. The mere fact that it is difficult to determine what part of the damage was occasioned by acts of the defendant is no objection to the relief asked. (*Chipman* v. *Palmer*, 77 N. Y. 51, 33 Am. Rep. 566; *Harley* v. *Merrill Brick Co.*, 83 Iowa, 73, 48 N. W. 1000; *Sellick* v. *Hall*, 47 Conn. 260; *Lull* v. *Improvement Co.*, 19 Wis. 101.) The Supreme Court of Connecticut, in *Sellick* v. *Hall, supra,* uses the following very pertinent language: "It may be very difficult for a jury to determine just how much damage the defendant is liable for and how much should be left for the city to answer for; but this is no more difficult of ascertainment than many questions which juries are called upon to decide. They must use their best judgment, and make their result, if not an abso-

lutely accurate one, an approximation to accuracy. And this is the best that human tribunals can do in many cases. If the plaintiff is entitled to damages and the defendant liable for them, the one is not to be denied all damages, nor the other loaded with damages to which he is not legally liable, simply because the exact ascertainment of the proper amount is a matter of practical difficulty."

Like all other case for the recovery of damages in actions upon torts, a jury must be trusted to arrive at a fair estimate of the damages after a full consideration of all the evidence which may be introduced upon the subject. However, competent evidence must be produced of all facts necessary to a recovery, upon which the jury can base a reasonably reliable conclusion; nothing can be left to mere conjecture.

2. In this case the injury to plaintiffs' land is alleged to be permanent; that its value is absolutely destroyed for agricultural purposes by the deposit of refuse and poisonous matter on the surface. Plaintiffs sought to recover as their damages for this injury the difference between the value of the land prior to the injury and its value after the injury. The court coincided with this view, and so instructed the jury, and we have no doubt but that this rule of damages for the permanent injury to the land was correct. (*Sweeny* v. *Montana Central Ry.,* 19 Mont. 163, 47 Pac. 791; *Jeffersonville, etc. R. R. Co.* v. *Esterle,* 13 Bush. 667; *Kemper* v. *City of Louisville,* 14 Bush. 87; *Babb* v. *Curators University of Missouri,* 40 Mo. App. 173.)

Plaintiffs also allege damage caused by pollution of the water to such an extent as to render it unfit for domestic use and watering stock, but introduce no evidence of such damage. Plaintiffs thereby waived recovery upon such allegation.

They also claim damage for injury to their crops for various years; they introduced proof thereon, and the court instructed the jury with reference thereto. The verdict was a general one for $3,000 damages, and rendered by the jury under instructions of the court allowing a recovery for permanent injury

to the land and also for injury to the crops. This verdict may, and doubtless does, include damages for both the above causes.

Generally, the recovery of damages for a total and permanent injury to land includes all injuries—past, present and future. It practically amounts to an allowance to take the land upon which the nuisance has been committed for those purposes upon payment of a reasonable compensation therefor, and the amount fixed as damages by the jury and court will be treated as such reasonable compensation. But in this case the permanent and total injury to the land for agricultural purposes did not immediately result from the nuisance itself, but several years elapsed before such injury was completed. Therefore, until the land was thus totally and permanently injured, plaintiffs would be entitled to recover damages for the yearly injury to their crops caused by the continuing nuisance.

When the land was totally and permanently injured for agricultural purposes, under the above authorities, no damages could be allowed for injury to the crops ensuing thereafter. Plaintiff thereby becomes compensated for everything which he could produce by the use of the land. In order, however, to allow plaintiffs to recover for injury to the crops and the permanent injury to the same land, the complaint and proof should show distinctly and unequivocally the date when the permanent injury to the land took place, and the annual injury to crops prior to that date. It may be that different portions of the land became permanently injured at different dates. This should also appear.

But, again, the evidence discloses that plaintiffs claim to own 240 acres of land, and shows that only 70 acres were so totally and permanently injured. There is neither allegation nor proof as to whether the remaining 170 acres are susceptible of raising crops, or whether, if so, any crops thereon had ever been injured. Plaintiffs might recover for such total and permanent injury to the 70 acres, and also for injuries to crops on the remainder, but would be compelled to allege the proper facts in that regard to warrant a recovery.

The complaint and evidence in this case are very general, and it cannot be ascertained from either when such total and permanent injury to any of the land was actually completed. It must have occurred before the suit was commenced, or plaintiffs could not recover for the same. The record discloses that plaintiffs were permitted to recover for injuries to crops up to the date of the commencement of the suit, so that, if plaintiffs were entitled to recover for the permanent injury to the same land, some length of time must have elapsed before the commencement of the suit for which plaintiffs were allowed to recover double damages; that is, for injury to the crops and for permanent injury to the same land. Therefore an error was committed prejudicial to the defendant, and the case must be reversed.

3. It is further disclosed by the record that plaintiffs procured a conveyance of this property from the Northern Pacific Railroad Company, acknowledged on the 26th day of January, 1900. Plaintiffs, therefore, could not recover for any injury arising from a destruction of the crop, by reason of the nuisance complained of, prior to that date, unless they introduced evidence showing that they were in possession of the property or entitled to such possession, and were entitled to recover for injuries to such possession.

4. Again, the record discloses that the defendant became the purchaser of the smelting and reduction plant, through the operation of which the nuisance complained of occurred, in 1897. It is clear that the defendant could not be held liable in this or any other action for damages caused by the operation of such plant by its predecessors in interest. If such damage arose, plaintiffs or their predecessors in interest were entitled to recover against the predecessors in interest of this defendant for such damage prior to the date when defendant became the purchaser and went into possession and operation of the property. Therefore, under any theory, plaintiffs could not recover damages against this defendant which were the result of acts committed prior to the day it became owner of the plant.

5. Many assignments of error are predicated upon the action of the court in overruling defendant's objections to certain questions propounded to plaintiffs' witnesses which called for an answer as to the effect the polluted water had upon plaintiffs' lands and crops, and as to the extent of the injury to plaintiffs' property. Counsel for appellant contends that such testimony amounts merely to inferences, opinions and conclusions of the witnesses from existing facts, and not to facts within their own knowledge; that it was for the jury to ascertain and determine the effect of these waters upon plaintiffs' land and crops, and the damage resulting therefrom, that such determination could only be reached by the jury from a consideration of the facts, testified to by witnesses, disclosing the extent of the pollution of the water, and the condition of the land and crops after such water had been introduced thereon; that this condition was a fact, and the result and effect of the water and damage occasioned thereby was a conclusion from such facts; that it is the province of witnesses to testify as to the existence of such facts, and of the jury to draw and determine the conclusions to be reached therefrom; that to allow witnesses to draw these conclusions and testify to the same invades the province of the jury.

These conditions seemingly raise the very perplexing questions as to when a non-expert witness may give his opinion, upon which the authorities are numerous and very much at war with each other. In the first place, we are of the opinion that these questions, in so far as the effect of the water on the land and crops was concerned, did not call for the opinions, inferences or conclusions of the witnesses from the facts, but for tangible, visible facts themselves, which resulted from a combination of other existing facts. If the waters destroyed the crops or the lands, or ruined the land for agricultural purposes, such effect, when disclosed, would be a fact within the knowledge of all witnesses who observed it.

In considering the testimony of witnesses at to the amount of plaintiff's injury because of the nuisance, however, we enter the domain of opinions, inferences and conclusions of witnesses.

As to non-expert witnesses, the general principles of evidence require them to testify as to facts within their own knowledge, and not to opinions, inferences and conclusions from existing facts. (Section 3121, Code of Civil Procedure.) There are, however, many exceptions to these principles, and no general rule can be announced whereby the existence of all these exceptions can be accurately stated. But some are so generally accepted that no rule as to the determination of their existence need be invoked. For instance, this court has recognized the exception of proof of value when the witness has shown himself qualified to express an opinion thereon. (*Holland* v. *Huston,* 20 Mont. 84, 49 Pac. 390; *Emerson* v. *Bigler,* 21 Mont. 200, 53 Pac. 621; *Porter* v. *Hawkins,* 27 Mont. 486, 71 Pac. 664.) This exception has been recognized by the courts almost uniformly. We have seen that the measure of damage to the land permanently injured is the difference between its value before and after the injury. Given testimony of this value, which may be shown by the opinions of non-expert witnesses, the determination of the amount of injury or damage is a mere matter of computation, and, upon reason and weight of authority, its computation may be made and given to the jury by non-expert witnesses when they do so in connection with the facts showing competency. (Lewis on Eminent Domain, Secs. 436, 437, and cases cited; Rogers on Expert Testimony, 154, and cases.) The knowledge of the witnesses can always be thoroughly tested on cross-examination, and a jury can be trusted to give the evidence such weight only as it deserves. There was no showing of the competency of many of the witnesses, and therefore the admission of their testimony was erroneous. The question of such competency is for the court, and upon another trial plaintiffs may prove the competency of the witnesses before the introduction of their testimony.

6. One of the plaintiffs, while on the witness stand, produced a sample of water taken from Deer Lodge river above their ranch, which was received in evidence. Counsel for defendant asked of this witness the following question on cross-

examination: "Don't you know that the sewerage of the city of Butte is dumped into Deer Lodge river above your ranch, and above where you took out this sample of water?" This question was excluded by the court, and, in our opinion, was clearly competent as proper cross-examination, and should have been allowed.

7. Again, one of the plaintiffs, while a witness, was allowed to give in evidence some of the contents of a written contract between plaintiffs and the Northern Pacific Railroad Company for the purchase of the land in question, without properly accounting for the absence of the contract. This was erroneous under former decisions of this court, but on another trial like error may be avoided, and further reference does not seem necessary.

8. Another important question upon which error is assigned must be considered. The evidence discloses that defendant became the purchaser of the reduction plant, the use of which is alleged to have contributed to the nuisance in question, in 1897. Counsel for appellant contend that defendant cannot be held liable to pay damages for a continuance of this nuisance, without allegation and proof of notice to defendant of the existence of the nuisance, and of the damage accruing therefrom. There is no doubt but this is a correct statement of the common-law rule as it has existed since the *Pendruddock Case*, decided in Lord Coke's time. It has been adopted and followed with great uniformity by the courts of this country, and, were it not for Section 4554 of our Civil Code, we should not hesitate to indorse and follow it. This section reads as follows: "Every successive owner of property, who neglects to abate a continuing nuisance upon, or, in the use of, such property, created by a former owner, is liable therefor, in the same manner as the one who first created it." Counsel for appellant cite this section, and then say, "This provision of the Code has been interpreted in *Grigsby* v. *Clear Lake Water Co.,* 40 Cal. 396," and then quote from the opinion in that case language which sustains the principle for which they contend.

An investigation of the statutes of California discloses that the section of the statute of that state (3483, Civil Code), identical with Section 4554, above quoted, was first adopted in 1872. The case above referred to was decided in 1870. It cannot be considered as construing a statute not then in existence. True, the annotators of both the California Codes and those of our own state cite this case under the sections above referred to, which would naturally lead one to believe that it is cited as a construction of such sections. If such citation was so intended, it was done either through inadvertence or mistake, as is clearly shown above.

The enactment of Section 3483 of the California Code may have been induced by the rendition of the decision above referred to; at all events, in our judgment it is directly contrary to the principle announced in the decision, and makes the successor to title to property who does not abate a continuing nuisance in the use of such property, which has been created by a former owner of the property, liable therefor in the same manner as the owner who first created it. Here it may be gathered from the pleadings and evidence that the nuisance complained of was created by defendant's predecessors in interest by the use of the property. There is no showing that defendant abated or sought to abate it, but, on the contrary, it appears conclusively that it continued the nuisance. Therefore the question of the necessity of notice to it, as claimed by the counsel, must be determined by the law as applicable to its predecessors in interest, and, if the law does not require notice to them, none was necessary to this defendant, under the plain provisions of Section 4554, *supra*. We find no cases holding that the creator of a nuisance need be given notice of its existence before suit is brought against him, and we believe none exists. Every man is charged with the knowledge of the results of his own acts, and every one must so use his own property as not to injure his neighbor's.

Defendant pleads Section 29, Code of Civil Procedure, 1887, and Sections 484, 524 and 513 (as amended), Code of Civil

Procedure, as a complete defense to plaintiffs' cause of action, and also pleads Subdivision 1, Section 524, Code of Civil Procedure as a partial defense.  It is difficult to determine from the instructions given which section of the statute of limitations the lower court determined was applicable to the case on the trial, because in paragraph 5 of the charge the jury was instructed that plaintiffs might recover for injuries committed at any time within five years prior to the commencement of the suit, while in paragraph 6 of the instructions the plaintiffs were limited to injury committed within two years prior to the commencement of the suit.  These instructions are inconsistent and conflicting with each other, and it is entirely impossible to determine which charge the jury followed in making up their verdict.  Ordinarily this would be sufficient to reverse the case, but, inasmuch as a new trial must be granted for other reasons, we shall not discuss the effect of these conflicting instructions. It may be well to announce, for the guidance of the lower court upon another trial, that, if any part of the statute of limitations is at all applicable under this opinion, it would be Section 518 of the Code of Civil Procedure—which is not pleaded, as this is not an action arising under either of the sections pleaded in the answer.

We advise that the judgment and order appealed from be reversed.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment and order are reversed, and the cause is remanded.