Summers, J.
Ritter’s Run in the days of the Indian was a limpid stream, but the natural and inevitable result of the coming of the white man with his dirty city was that it degenerated into a fqul drain aiid became a nuisance when it was made the outlet for sewers.
But these consequences do not warrant an attempt to arrest the march of civilization, ór, as *275 it is beautifully expressed by Lord Justice James, in Salvin v. North Brancepeth Coal Co., L. R., 9 Chancery App. Cases, 705: “If some picturesque haven opens its arms to invite the commerce of the world, it is not for this court to forbid the embrace, although the fruit of it should be the sights, and sounds, and smells' of a common seaport and shipbuilding town, which would drive the Dryads and their masters from their ancient solitudes.”
The principal sources of pollution in Ritter’s Run were five drains or sewers, a cess-pool belonging to riparian proprietors and refuse thrown or permitted by them to find its way into the stream. Of the sewers, four were private sewers or drains, one laid in private property and the others in the streets of the city by permission from the city, and only one was constructed by the city, and that was not constructed as a sewer but consisted of two lines of eight-inch pipe that had been laid with open joints, one line on each side of a street, for the purpose of drainage and as part of the improvement of the street.
It does not appear that the city authorized any of these drains to be used as sewers, but that they were so used and that Ritter’s Run became so foul as to occasion material discomfort to the plaintiff does appear. The city had knowledge that sewage was being deposited in the stream through these drains and that this matter in connection or combination with other matters in the stream created a nuisance. There was evidence that the plaintiff was sick for a time, but whether from the ills that flesh is heir to or from the condition of the stream is left wholly to conjecture. There is no evidence *276 of depreciation in the value of plaintiff's property or in its rental value, and it appears that she all the while continued there to reside, so that the amount of the verdict raises a doubt that the jury had any just conception of the measure of the defendant's liability and leads to an examination of the instructions that were given them for their guidance. The court having charged in substance that the owner of land over which a stream of water flows has a right that it should continue to flow over his premises in the quantity, quality and manner in which it is accustomed to flow by nature, subject to the right of upper land owners, over whose land it also flows,.to make a reasonable use of the stream, and that this right is a property right, and that the city would have a right to use this stream for sewerage purposes, providing it could do so without material injury to the lot-owners below, then instructed them, in effect, that the city is given control of its streets and, under Section 203 of the new Municipal Code, Section 1536-857, Revised Statutes, of sewers, drains, ditches and water-courses and charged with the duty of keeping its streets open and free from nuisances, and that it would be liable to the plaintiff in damages for the injuries she suffered in health and comfort from the nuisance created in the,, stream, if they found one was so created, whether it was created by the city or by others, if, after knowledge that they were creating a nuisance, it neglected to prevent them from so doing; and further that it was not essential to liability on the part of the city that it should have caused the entire injury, and that it was no defense that, others in like manner had contributed to it, and that they *277 might consider any evidence offered by the. defendant tending to prove such fact in mitigation of damages only and for no other purpose.
The care, supervision and control of public streets is given to the city and it is made its duty to cause them to be kept open and in repair and free from nuisance, and the city is liable for damages resulting from its negligence in the discharge of this duty. City of Zanesville v. Fannan, 53 Ohio St., 605. The construction of a public sewer in the streets is an authorized use'of the streets (City of Cincinnati v. Penny, 21 Ohio St., 499), and, under the power given it over its streets, a city may grant permission to a lot owner to lay a private sewer in a public street, but neither at common law nor under the statute could it authorize a nuisance, and at common law as well as under the statute it would be liable for damages resulting from its negligence in not abating a nuisance on land in its possession and under its control. In Laugher v. Pointer, 5 B. & C., 547, Mr. Justice Littledale says: “The rule of law may be that in all cases where, a mail is in possession of fixed property he must take care that his property is so used and managed -that other persons are not injured, and that, whether his property be managed by his own immediate servants or by contractors or their servants. The injuries done upon land and buildings are in the nature of nuisances, for which the occupier ought to be chargeable when occasioned by any acts of persons whom- he brings upon the premises. The use of the premises is confined by the law to himself, and he should take care not to bring persons there who do any mischief to others.” This statement of the rule was *278 approved in Quarman v. Burnett, 6 M. & W., 499; and in Rich v. Basterfield, 4 M. G. & S., 782; and by Sir G. Jessel, M. R., in White v. Jameson, 18 L. R. Eq. Cases, 303, where he says: “Now here Jameson was in possession of the property, but he did not demise it to Proffitt, he merely granted to him a revocable license to burn bricks upon it. Consequently he has brought Proffitt on his land and allowed him to commit a nuisance, and for this I hold he is liable to be sued in equity as well as at law.”
The court in effect charged the jury that the city was given control of this water-course by Section 203. of the new Municipal Codé, and that having control of the water-course it was its duty to prevent it from being made a nuisance, and in the event a nuisance was created therein, to abate it after it had notice of the fact. This clearly was prejudicial error. That section provides that the street commissioner, under tlie direction of' council, shall supervise the improvement and repair of sewers, drains, ditches, streams and water-courses. The plaintiff’s injuries were not occasioned by any improvement or repair of the water-course, and moreover the statute applies only to villages. The stream is private propert}^ and as long as it so remains the only authority over it that may be delegated by the legislature to the city is in the exercise of the police power, and for a failure to exercise that power, or for a failure of the city’s agents to enforce regulations prescribed in the exercise of the power, the city would not be liable.
In its charge the court also said: “To hold the city liable it is not necessary that it should have produced or caused,the entire injury; that others’ *279 may have contributed to the injury in the same way would not be a defense, for our own circuit court has said in the language following: ‘Neither is it any defense to an action for a nuisance resulting from the pollution of a stream of water or otherwise, that other persons are also contributing to the injury in the same way with the defendant; the fact that others are committing a wrongful act is no excuse for other’s wrong. It may in a proper case be shown in mitigation of damages, but not to defeat the action.’ And I say to you that you may consider any such evidence offered by the defendant tending, as it claims, to show that other persons contributed to the injury complained of in the same way with the defendant, in mitigation of damages only, in case you find for the plaintiff, and for no other purpose.”
This statement of the law is found in the opinion of the circuit court in the case of City of Mansfield v. Hunt, 19 O. C. C. Rep., 488, 497, and is a quotation from Wood on Nuisances. But if the learned author and the circuit court are to be understood, as they were by the trial court, as declaring the law to be that a riparian proprietor, who hás been injured by the pollution of a stream by the acts of several, may in a suit against one recover against him for the entire injury, excepting to the'extent that the jury may mitigate the amount of the recovery by the consideration of evidence tending to prove the extent to which the acts of others contributed, then it is to be observed that the quotation is not a correct statement ’of the law and is not supported by the cases cited by Wood or by the cases and authorities cited in the opinion of the circuit court.
*280 Crossley & Sons, Limited, v. Lightowler, 3 L. R. Eq. Cases, 279, was a suit to restrain the defendants from suffering the foul water from their dye works to flow into or foul the water of the stream or from otherwise preventing or interfering with the plaintiffs having the use or enjoyment of the water of the brook in its natural state, and Vice-Chancellor Wood, upon the authority of St. Helen’s Smelting Co. v. Tipping, 11 H. L. C., 642, ruled that “It is no answer to a plaintiff complaining of a private nuisance to say that a great many other persons are committing the same sort of nuisance,” and on. appeal, 2 L. R., Ch. App. Cases, 478, the ruling was approved. And in Attorney-General v. Leeds, Corporation, 5 L. R., Ch. App. Cases, 583, it is held that “though the river Aire was polluted before it received the drainage of Leeds the land owners on the banks were entitled to restrain the further pollution.” To the same effect are the other cases and authorities cited and in none of them is the view suggested taken.
It will be observed that all but one of the cases cited were suits for injunction against several defendants, and not only was it not ruled in any of them that all of the damages might be recovered in one action or from one defendant but the question was not even raised. And in Woodyear v. Schaefer, 57 Md., 1, and in Warren v. Parkhurst, 92 N. Y. Supp., 725, one of f;he grounds assigned for entertaining jurisdiction to enjoin is that there is no adequate remedy at law because of the difficulty in proving the ' extent to which each party had contributed to the injury.
In Chipman v. Palmer, 77 N. Y., 51, it is held that “where different parties pollute a stream by *281 the discharge of sewage therein, each in his own premises, and each acting separately and independently of the others, one of the number is not liable for all of the” injury suffered by another, because of the nuisance they cre-ated; each is liable only to the extent of the wrong committed by him.” In the opinion Miller, J., says: “The fact that it is difficult to separate the injury done by each one from the others furnishes no reason for holding that one tort-feasor should be liable for the acts of others with whom he is not acting in concert.” He also criticises Wood on Nuisances, Section 831, cited as authority for the contention that one who contributes to the production of the nuisance is chargeable with all the damages, and he reviews the cases cited and says they do not sustain such a principle.
Twelve years later, in 1898, in Miller v. Highland Ditch Co. et al., 87 Cal., 430, it was held: “Where debris is deposited upon the lands of the plaintiff by means of different ditches constructed and operated by several defendants, between whom there was no concert of action, a joint action may be- maintained to enjoin them all from continuing the wrong, but a joint judgment for damages in such action is erroneous, and will be reversed.”
The rule is thus stated in 1 Cooley on Torts, 244, 246, (3d Edition) : “All who actively participate in any manner in the commission of a tort, or who command, direct, advise, encourage, aid or abet its commission, are jointly and severally liable therefor.” And again:_ “In respect to negligent injuries, there is considerable difference of opinion as to what constitutes joint liability. No comprehensive rule can be formulated which har *282 monizes all the authorities. The authorities are, perhaps, not agreed beyond this, that wliere two or more owe to another a common duty and by a common neglect of that duty such other person is injured, then there is a joint tort with joint and several liability.”
The case of Swain v. Tennessee Copper Co. et al., 111 Tenn., 430, received very careful consideration. Very great interests were involved, as will appear from the statement of facts in the subsequent case of Madison et al. v. Ducktown Sulphur, Copper and Iron Co., Limited, 113 Tenn., 331. In the former case a great many cases are examined, and it is there ruled that “Where two distinct corporations in proximity to each other operate their respective and separate plants for reducing and converting copper ores into metal- ingots or commercial copper, from each of which are emitted immense volumes of noxious, foul, and poisonous smoke and gases, which afterwards indistinguishably mingle, commingle, and intermingle into clouds of noxious, deadly, and poisonous vapors, creating an actionable nuisance, but there is no common ownership or operation of the plants, no community of interest, nor common' design, purpose, concert, or joint action, a suit by an adjoining or adjacent property owner' against them jointly for damages caused by their wrongful acts so separately committed is not maintainable.” Also that each corporation was liable only for its proportion of the damages. To the same effect is Bowman v. Humphrey., Jr., 124 Iowa, 744. And in Watson et al. v. Colusa-Parrot Mining and Smelting Co., 31 Mont., 513, 79 Pac. Rep., 14, it is held that “Where a nuisance arises from the individual acts *283 of different mining and reduction companies, which have discharged deleterious and poisonous matter into the waters of a creek, and the injury is in no sense a joint one, each company is liable to the person injured for the damage caused by its own wrongful acts, and not for that caused by the acts of others, regardless of the difficulty of determining what part of the damage is occasioned by the acts of each.” In Martinowsky v. City of Hannibal, 35 Mo. App., .70, it is held that: “Where a waterway is made the receptacle of masses of filth and offensive substances thrown into it by a number of persons at various points along its course, so that a nuisance is created to the injury of an adjacent resident, such injured person can not maintain an action against all the contributors jointly, blit may sue each of them separately, and can then recover in each case only for the proportionate amount of injury caused by the acts of the defendant therein. Nor can a defendant in any one of such cases set up a defense on the ground that the nuisance was the combined effect of all the acts done by himself and others.” And 'in Sloggy v. Dilwor.th et al., 38 Minn., 179, it is held that “Where lands are unlawfully flooded with surface water, as the result of the joint act of several parties, each may be sued for the entire damage. But where the damage is the result of the acts of several,' acting independently of each other, each is liable for his proportion only.”
Chipman v. Palmer, 77 N. Y., 51, supra, is cited as the leading case in support of the rule that the parties who merely contribute to the pollution of a stream are not jointly liable, but evidently it is based upon Little Schuylkill Navigation, R. R. & *284 Coal Co. v. Richards’ Admr., 57 Pa. St., 142, which may be characterized as the original if not the leading case. What the case was as well as the reasoning upon which the conclusion was reached will appear from the following portions of the opinion by Agnew, J.: “The plaintiff’s intestate was the owner of a* dam’ and water power upon the Little Schuylkill river. In process of time, from 1851 to 1858, the basin of the dam became filled with the coal-dirt, washed down by the stream from the mines above, of several owners, upon Little Schuylkill, Panther Creek and other tributaries. They were separate collieries, worked independently of each other. The plaintiff seeks to charge the defendants below with the whole injury caused by the filling up of his basin. The substance of the charge and answers to points was, that if at the time the defendants were engaged in throwing the coal-dirt into the river, about ten miles above the dam, the same thing was being done at the other collieries, and the defendants knew, of this, they were liable for the combined result of all the series of deposits of dirt from the mines above from 1851 till 1858.” “The doctrine of the learned judge is somewhat novel, though the case itself is new; but, if correct, is well calculated to alarm all riparian owners, who may find themselves by a slight negligence overwhelmed by others in gigantic ruin.
“It is immaterial what may be the nature of their several acts, or how small their share in the ultimate injury. If, instead of coal-dirt, others were felling trees and suffering their tops and branches to float down the stream, finally finding a lodgment in the dam with the coal-dirt, he who, threw in the *285 coal-dirt, and he who felled the trees would each be responsible for the acts of the other. In the same manner separate trespassers who should haul their rubbish upon a city lot, and throw it upon the same pile, would each be liable for the whole, if the final result be the only criterion of liability. But the fallacy lies in the assumption that the deposit of the dirt by the stream in the basin is the foundation of liability. It is the immediate cause of the injury, but the ground of action is the negligent act above. The right of action arises upon the act of throwing the dirt into the stream — this is the tort, while the deposit below is only a consequence. The liability, therefore, began above with the defendant’s act upon his own land, and this act was wholly separate, and independent of all concert with others. His tort was several when it was committed, and it is difficult to see how it afterwards became joint, because its consequences united with other consequences. The union of consequences did not increase his injury. If the dirt were deposited mountain high by the stream his dirt filled only its own space, and it was made neither more nor less by the accretions. True, it may be difficult to determine how much dirt came from each colliery, but the relative proportions thrown in by each may form some guide, and a jury in a case of such difficulty, caused by the party himself, would measure the injury of each with a liberal hand. But the difficulty of separating the injury of each from the others would be no reason that one man should be held to be liable for the torts of others without concert. It would be simply to say, because the plaintiff fails to prove the injury oñe man does *286 him, he may therefore recover from that one all the injury that others do.
“This is bad logic and hard law. Without concert of action no joint suit could be brought against the owners of all the' collieries, and clearly this must be the test; for if the defendants can be held liable- for the acts of all the others, so each and every other owner can be made liable for all the rest, and the action must be joint and several. •But the moment we should find them jointly sued, then the want of concert and the several liability of each would be apparent. These principles are fully sustained by the following cases: Russell v. Tomlinson et al., 2 Conn., 206; Adams v. Hall, 2 Vt., 9; Van Steenburgh et al. v. Tobias, 17 Wend., 562; Buddington v. Shearer et al., 20 Pick., 477; Auchmuty v. Ham, 1 Denio, 495; Partenheimer v. Van Order, 20 Barb., 479. These were cases where the dogs of several owners united in killing sheep, and where the cattle of different owners broke into an enclosure and united in the damage. The concert and united action of the dogs and cattle were held to create no.joint liability of their owners, notwithstanding the difficulty of determining the several injury done by- the animals of each.”
In The Chicago & Northzvestern Ry. Co. v. Hoag, 90 Ill., 339, the court refused to charge to the effect that if the jury found the damage to plaintiff’s property was the combined result of the acts of the defendant and another that then the plaintiff could not recover against the defendant for the damage occasioned by the-acts- of the other party; and that if the jury could not determine what part or portion, if any damage, was occasioned by the defendant’s acts then in no event *287 could they find for the plaintiff more than nominal damages. In the opinion Sheldon, J., says: “The -first clause of the instruction is well enough, but the last one is objectionable as liable to misle'ad the jury to the extent that unless they could determine to a certainty the extent of damages from each of these sources, they could find only nominal damages for the plaintiff. The evidence justified the belief that the water came mainly from the tank and the plaintiff was entitled to recover for all damages from that source; and if they could not separate and distinguish between the several amounts of the damage caused by the water from the tank and the surface water respectively, they should have been left at liberty to estimate as1 best they might, from the evidence, how much of the whole damage was occasioned by the water from the tank.”
And in Babbitt v. Safety Fund National Bank, 169 Mass., 361, where the trial court refused to instruct the jury that it was necessary for the plaintiff to show, in order to recover damages of the defendant, precisely what part of the damage was caused by the negligence and unlawful act of the defendant, and if the facts did not disclose what part of the whole damages was caused by the defendant’s negligent act, there could be no recovery, and did charge “if you find there is evidence of such a discharge, and that the defendant contributed by its acts to the increase of the volume of water and its discharge upon the plaintiff’s land, then the plaintiff would be entitled-to recover the precise amount of damage caused by the defendant’s act. The plaintiff would not be entitled to recover from the defendant what damage was *288 caused to it by the acts of the city,. for the fact that sewers passed through that- street and discharged its sewage in such a way as to fill up the stream.” And it was held that if there was any inaccuracy in any of the instructions it did the defendant no harm.
The view that each person contributing to the fouling of a stream is liable only for the damages caused by his own acts is vigorously combatted by Kay, J., in Blair and Sumner v. Deakin, 57 L. T. R. (N. S.), 526.
In Boyd v. Watt, 27 Ohio St., 259, it is ruled that “where the damages resulting arise from incapacity from business, and loss of estate, caused by such habitual intoxication, and it becomes impossible to separate the damages caused by others from those caused by the .defendant, he is liable for all such damages, if the natural and probable consequences of his illegal acts were to cause such injury.” But that case w;as upon the interpretation of a statute, and the conclusion reached may be based upon the legislative intent, and is not, therefore, binding authority in a case controlled by the general principles of law.
In Sadler v. Great Western Railway Co. (1895), 2 Q. B., 688, in the Court of Appeals, the case was this: The plaintiff, a dealer in cycles, brought an action against two railway companies which had parcel offices adjoining his shop on opposite sides, alleging that each company caused carts to stand on the highway in front of its office for an unreasonable length of time, and that these combined acts prevented all access to his shop by vehicle or cycle, and caused him special inconvenience and loss of trade. He claimed damages and an injunc *289 tion. One of the companies obtained an order in chambers staying the action unless the claim was maintained by striking* out the name of the other company as a defendant and it was held that the order was right, for that the two companies were separate tort-feasors, and could not be joined as co-defendants in -an action for damagés. Smith, L. J. said: “He is trying to sue as co-defendants two independent separate alleged tort-feasors, neither of whom has any control or power over the acts of the other tort-feasor. He is trying to sue them jointly in one action. * * * In my opinion these two torts, if they are torts, are independent torts by the different companies, although, as I have already stated, the acts of each company can be taken into account in considering the acts of one company and deciding whether" they amount to a nuisance or not. The acts of the other company can be taken into account because it may be that the one company ought not to be doing what it was when the other company was doing what it did. But that does not make these two causes of action a joint cause of action or give any right to join one company with the other in one action.” Rigby, L. J., dissented, btit in Sadler v. The Great Western Railway Co., (1896) A. C., 450, in the House of Lords, the order was affirmed. Lord Halsbury, L. C., said: “I really think this case is too plain for argument, notwithstanding the period it has lasted.”
Pollock on Torts, 2d Ed., 356, is cited in Simmons et al., Admrs., v. Everson et al., 124 N. Y., 319. That edition is not at hand, but in the seventh edition, 406, it is said: “A cause of action for nuisance may be created by independent acts of differ *290 ent persons, though the acts of one -only of those persons would hot amount to á nuisance.” “Suppose one person leaves a wheelbarrow standing on a way, that may cause no appreciable inconvenience; but if a hundred do so that may cause a serious inconvenience, which a person entitled to the use of the way has a right to prevent; and it is no defense to any one person among the hundred to say that what he does causes of itself no damage to the complainant.” And then the learned author adds: “But this does not mean that a plaintiff may make two or more independent wrongdoers co-defendants in a single action for damages whatever may be the rule where only an injunction is claimed.” And he cites as authority for the statement the two cases just noticed.
The cases have been noticed at such great length because in the recent case of West Muncie Strawboard Co. et al. v. Slack et al., 164 Ind., 21, 72 N. E. Rep., 879, it is said, “A distinction, however, is recognized between such acts which-are wrongful only because injurious to individual rights, and those which combine and constitute a public nuisance.” And it was there ruled that “one who creates a public nuisance is responsible to individuals especially damaged, not only for the actual loss he alone has occasioned them, but also for the damages caused by similar acts of third persons which independently concur in causing the injury complained of.”
The reason given for the distinction is thus stated: “In the former class of cases each separate wrongdoer is chargeable with his own acts alone, in the absence of a joint purpose among the participants; in the latter, each may be answerable in *291 a joint and severable action, no.t only for what he himself does, but likewise for the acts of those who, with him, violate public as well as private rights. If a party deliberately places himself in opposition to the entire community by performing an act which, in combination with the independent wrongful act of others, violates an express statute and creates a public nuisance, he is not in a position to assert that he should be held responsible to individuals specially damaged for only the actual loss he alone, has occasioned them. He must have anticipated the natural and probable consequences of his acts, namely, the violation of a public right; and the public interest requires he shall, if need be, even in a civil action, bear the full burden of the wrong he has assisted in inflicting. Nor is it material that his act of itself, and without reference to the co-operation of others, would create a public nuisance. He must be deemed to know, in a case such as the present, that, if this wrong combines with similar acts of third parties, the result will be to intensify the public and private injury. The welfare of the community demands that he who thus intentionally and aggressively assists either in creating or maintaining a public nuisance in defiance of positive enactments shall answer in civil damages for all injurious consequences proximately resulting therefrom to private individuals who bring themselves within the requirements of the law.”
The cases cited as supporting this view are: Simmons et al., Admrs., v. Everson et al., 124 N. Y., 319; Irvine v. Wood et al., 51 N. Y., 224; City of Valparaiso v. Moffitt et al., 12 Ind. App., 250. The latter case is based upon the first and need *292 not be noticed. Simmons v. Everson is this: Three adjoining stores, in fact, one building, but each store belonging to a separate person, were destroyed by fire, leaving the front wall standing and leaning towards the street until it afterwards fell into the street and killed the plaintiff’s intestate. The entire wall fell, but no part of the material of the wall or that part of the wall in front of one of the owners touched the party killed, but it was held that the three owners were jointly and severally liable. Chipman v. Palmer, 77 N. Y., 51, supra, was urged against the joint liability, but Follett, C. J., said: “The case at bar does not belong to the class of actions arising out of acts or omissions which are simply negligent, and while the defendants did not intend by their several acts to commit the injury, their conduct created a public nuisance which is an indictable misdemeanor under the statutes of this state and at common law.”
“Persons who by their several acts or omissions maintain a public or common nuisance, are jointly and severally liable for such damages as are the direct, immediate and probable consequences of it.” And Irvine v. Wood et al., 51 N. Y., 224; Slater et al. v. Mersereau, 64 N. Y., 138; Timlin, Admx., v. Standard Oil Co. et al., 54 Plun, 44; Klauder v. McGrath, 35 Pa. St., 128, are cited in support of the ruling. With all due respect it ma}^ be said that the neglect of the several owners did not cause the wall to fall. If the wall was owned jointly, or if the injury resulted from the concurring negligence of the several owners, then it was the duty of each to abate the nuisance and in consequence of the neglect of each to perform the common duty *293 the plaintiff was injured and so they were jointly and severally liable. The reason for a joint liability in such cases is thus stated by Strong, J., in Klauder v. McGrath, 35 Pa. St., 128, which was an action against two persons to recover for damages from the falling of a party wall: “The maintenance of an insecure party wall was a tort in which they were both participants. The act was single, and it was the occasion of the injury to the plaintiff. It is difficult, therefore, to see why both were not liable, and liable jointly. The case is not to be confounded with actions of trespass brought for separate acts done by two or more defendants. There, if there has been no concert, no common intent, there is no joint liability. Here, the keeping of the wall safe was a common duty, and a failure to do so was a common neglect. ' The rule often recognized is, that when an injury has resulted from the concurrent negligence of several persons, they are jointly responsible.” In Irvine v. Wood et al., 51 N. Y., 224, the lessor, and lessee of premises were held jointly and severally liable for injuries sustained by a fall into a coal hole in front of the premises, and in the opinion, Earl, J., says: “Each one of several persons who continue a nuisance is responsible for it, and he may, as in all cases of wrong, be sued alone or with the other wrongdoers.” It will be seen that the ground for a liábility assigned here is in fact the same as that in the case just preceding, that is, negligence in not abating a nuisance, and because of the neglect of a common duty the defendants were jointly and severally liable.
Slater et al. v. Mersereau, 64 N. Y., 138, is- a case in which by reason of the negligence of separate contractors in the construction of a building *294 water from their different parts of the building found its way into the cellar and there united and found its way through the walls on to an adjoining property where it did injury,.and it was there held: “where separate and independent acts of negligence of two parties are the direct cause of a single injury to the third person and it is impossible to determine in what proportion each contributed to the injury, either is responsible for the whole injury; and this, although his act alone might not have caused the entire injury, and although without fault' on his part the same damage would have resulted from the act of the other.” The opinion is by Miller, J., the same judge who wrote the opinion in Chipman v. Palmer, 77 N. Y., 51, supra, and in the latter case he says the former “was a case where the separate and independent acts of negligence of two parties was the cause of a single injury to a third person, and as was said in the opinion, .was somewhat analogous to a case where the injury was caused by the concurrent negligence of the trains of two railroad corporations. That case was well decided and in no way upholds the doctrine contended for by the plaintiff’s counsel, and is not in point.”
Timlin, Admx., v. Standard Oil Co. et al., 54 Hun, 44, is a case in which a wall fell and killed a person working near it and it was held that the lessors and lessees were jointly and severally liable for the same reasons for which they were held liable in the case of the coal hole in the sidewalk.
It will be observed that in none of these cases is the fact that the act was a public nuisance, as distinguished from a private nuisance, given as a ground of joint liability. Indeed Slater et al. v. *295 Mersereau, 64 N. Y., .138, supra, is a case not of public but of private nuisance.
The distinction suggested in West Muncie Strawboard Co. v. Slack et al., 164 Ind., 21, supra, has no foundation in precedent and is not believed to be maintainable on principle. The distinction assumes that several torts have been committed but holds the perpetrator of one liable for the damage from' all on the sole ground that his act is a public wrong. If I give you a beating to-day, or rather, if you to-day beat me and to-morrow another does likewise, and in consequence I take to my bed, are you liable to me in damages for all of my injuries because your act was unlawful ? In White v. Conly, 14 Lea, 51, the facts are that White and Conly, at a trial before a justice of the peace, engaged in a fight, and while so engaged White’s son, acting in sympathy and in aid of his father, but without his knowledge, cut Conly with a knife, of which wound he died, and the widow of Conly sued both father» and son to recover damages. The court charged, in substance, that if the father willingly fought he was engaged in an unlawful act, and that if while so engaged the son inflicted the wound, both were liable, and accordingly a verdict was returned against both, but the supreme court overruled Beets v. The State, Meigs’ R., 106 (19 Tenn.), on which the instruction was based, and approves what is said in 1st Bishop’s Criminal Law, Section 439, that “the true view is doubtless as follows: every man is responsible, criminally, for what of wrong flows directly from his corrupt intentions; but no man, intending wrong, is responsible for an independent act of wrong committed by another.”
That an act was a delict, as distinguished from *296 a quasi delict, may be a reason for denying contribution among those answerable for it (Palmer v. Wick and Pulteneytown Steam Shipping Co., Ltd., 1894, L. R. A. C., 318), but it is not a ground for making one wrongdoer answer for the wrongs of another merely because they result in injury to the same person.
The city requested twenty special instructions, only two of which were given. That some that were not given should have been given will appear from what has been already said. They are too numerous to set out or to consider in detail, and it is sufficient to say that no injury to the plaintiff’s property was shown, that the discomforts arising from the acts complained of were not so serious as to induce her to seek to restrain them, that the recovery should have been limited to damages for injury to plaintiff’s comfort occasioned solely by the acts of the city, and that the amount of the recovery must be attributed to the erroneous instructions given to the jury.

Judgments reversed.

Shauck, C. J., Crew, Spear and Davis, JJ., concur.